Jacob Markowitz, J.
This controversy arises out of an attempt by the respondents (except the Attorney-General) to “ co-op ” an apartment house in New York Oity and specifically around the conflicting interpretations of applicable statutes and regulations defining the number of tenants who must accept the plan and proposal and agree to purchase apartments before it may become effective. The specific relief requested by petitioners is an order prohibiting the respondent Attorney-General from approving or accepting for filing a proposed amendment to the offering statement filed with him by the respondent sponsors.
A real and substantial controversy has been presented which affects substantial rights of the parties hereto and which, if left unresolved, could .severely prejudice some of the parties or those allied in interest with them. Notwithstanding the misnomer of the petition as an application for an order of mandamus, the court will consider it as one for a declaratory judgment.
The petitioners’ quarrel with the proposed amendment concerns the number of tenants who must agree to purchase apartments (stock in the co-operative) before the plan becomes effective. The apartment building contains units subject to rent control and others subject to rent stabilization. Under section 55 of the Rent, Eviction and Rehabilitation Regulations, applicable to rent controlled apartments, the co-operative plan cannot become effective and the rights of those in possession of rent controlled apartments would not be affected, unless 35% of the tenants of such apartments consented to the plan.
The original plan filed provided that it would become effective upon consents obtained from tenants constituting 35% of those occupying each class of apartment. The proposed amendment, intended obviously to avoid the sponsor’s inability to obtain such consents from the rent controlled apartments, is intended to operate without .section 55 of the rent regulations. It provides, in substance, that the plan will become effective upon con *440 sents thereto obtained from 35% of the tenants of all apartments in the building provided that 35% of the tenants -of the rent stabilized apartments consent. Thus, under the amendment, the plan could become effective though less than 35% of the tenants -of rent controlled apartments consent and petitioner^ urge that this is improper and consent from this group must be obtained also.
The construction urged by the respondent sponsors is in accord with the language of section 61(4) (a) of the Bent Stabilization Law and Code which provides in pertinent part that “ the Plan will not be declared * * * unless and until 35% of the tenants then in occupancy have agreed to purchase their dwelling units * * *.
“In establishing a base for computing the required 35%, all residential units in the building will be computed.” (emphasis added). Further section 2(g),(1) of the code provides that the code shall not apply to rent controlled dwelling units. Thus it would appear that for the plan to become effective on the terms proposed (excepting from its scope rent controlled units) 35% of all units (but including at least 35% of units subject to rent stabilization) must consent to purchase. This construction conforms to that of the city’s housing officials.
It is difficult to see how tenants of rent controlled units can be prejudiced by this construction. While stock of the co-operative representing ownership of the rent controlled apartments will be offered, the rights of tenants of such apartments to continued possession will not be affected by the conversion (see De Minicis v. 148 East 83rd St., 15 N Y 2d 432, 435).
At most a change of ownership of the building is involved and tenants are granted no rights by statute or otherwise to interfere therewith. Insofar as prospective purchasers of shares are concerned, it is their choice to purchase or not and so long as they are adequately advised of the rights of tenants in possession of rent controlled apartments no basis exists for interference with the prospective purchasers’ rights. Whether or not such purchasers will be afforded relief under applicable tax laws or not by virtue of the mixed character of tenancies is not a matter for this court or the Attorney-General to decide — so long as they are made aware of. the factors involved.
Clearly it is within the jurisdiction of the Attorney-General to review the offering statement and any amendments thereto. Indeed that is his obligation. Moreover the function of the Attorney-General in reviewing such matter is that of insuring full disclosure of all pertinent matter to those from whom purchases are solicited. No, showing has been made of any *441 past, present or threatened future action by the Attorney-General not in compliance with his obligations to so act.
Accordingly the petition is deemed a complaint for a declaratory judgment, the opposing papers the answers thereto and both as motions for summary judgment thereon and as so considered the motion is granted to the extent of determining that the interpretation advanced by the respondent sponsors is correct.