Abbaham J. Gellihoff, J.
This article 78 proceeding presents the question whether decontrolled apartments may be counted in determining whether a plan to co-operate an apartment building meets the requirement that 35% of the tenants in occupancy agree to purchase their apartments (Administrative Code of City of New York, § YY51-6.0, subd. c, par. [9], cl. [a] ; Code of the Beal Estate Industry Stabilization Association, § 61, adopted pursuant thereto).
Petitioners, various tenants of 1250 Ocean Parkway, Brooklyn, whose apartments are subject to rent stabilization (Administrative Code, § YY51-1.0 et seq.), contend that respondent Attorney-General has acted improperly in accepting for filing, and permitting to become effective, an offering plan to convert the building into a co-operative (General Business Law, § 352-e). They claim that the 35% requirement was not met because included in the computation were apartments which were occupied and subject to rent stabilization at the time the offering plan was initially filed, but which thereafter became vacant, and thus decontrolled (Emergency Housing. Bent Control Law; L. 1946, ch, 274, as amd. by L. 1971, ch. 371, the Vacancy Decontrol *823 Law). Petitioners urge that despite the desire of the new tenants of those apartments to purchase them, they may not be included in the computation, and that only tenants of apartments subject to rent stabilization when the plan is declared effective may be counted towards the 35%.
The Code of the Real Estate Industry Stabilization Association of New York City, Inc., which was adopted pursuant to the approval of the Housing and Development Administration, provides, in section 61, that:
“An owner of a structure containing dwelling units subject to this Code may refuse to renew leases for such dwelling units when
“ 1. The Attorney General of the State of New York has accepted for filing an offering Plan to convert the building to cooperative or condominium ownership, and
‘ ‘ 2. The owner has presented the offering Plan to the tenants in occupancy, and
“ 3. The owner has filed a copy of the accepted offering Plan with the Housing and Development Administration, and
“ 4. The Plan provides
“ (a) The plan will not be declared effective by the Owner (Sponsor) unless and until 35% of the tenants then in occupancy [tenant occupants] have agreed to purchase their dwelling units or the stock entitling them to proprietary leases for their dwelling units with no discriminatory re-purchase agreement or other discriminatory inducement.”
In establishing a base for computing the 35% requirement the following shall apply:
“ (i) All purchases by occupants who were in possession at the time of the presentation of the Plan shall be included;
‘ ‘ (ii) All purchases of apartments that became vacant after the Plan was presented will be included.”
Nothing in the language of the code excludes decontrolled apartments from the calculation. Section 61 does not refer to apartments that are “stabilized,” or “decontrolled;” it simply requires agreement by 35% of “ the tenants then in occupancy.” And petitioners’ reliance on Matter of Ortega v. Lefkowitz (66 Misc 2d 438 [Sup. Ct., N. Y. County, 1971], affd. 38 A D 2d 792 [1st Dept., 1972]) for the proposition that the code intended to require that 35% of the tenants of rent stabilized apartments must agree, is misplaced. Ortega involved the co-operation of a building which had some stabilized and some rent-controlled apartments. The code specifically excludes rent-controlled apartments from coverage (§ 2, subd. [g], par. *824 [1]), and the court in Ortega was called upon to interpret section 61 in light of that exclusion.
Moreover, to accept petitioners’ position leads to a result prohibited by the Local Emergency Housing Rent Control Act (L. 1962, ch. 21, as amd. by L. 1971, ch. 371, § 6) which provides that “ The removal of any housing accommodation from regulation and control of rents pursuant to the vacancy exemption provided for in this paragraph shall not constitute or operate as a ground for the subjection to more stringent regulation and control of any housing accommodation in such property.” As petitioners would have it, an owner, such as the owner of the building at issue here, would have been permitted to refuse to renew a lease for a rent-stabilized apartment — relying in part on section 61 (subd. 4, par. [a], cl. [ii]) of the code to reach the required 35% — prior to the enactment of the Vacancy Decontrol Law; now he is to be prohibited from doing so. By such a holding the enactment of the Vacancy Decontrol Law would “ operate as a ground for the subjection to more stringent regulation and control ’ ’ of the apartment, by prohibiting refusal to renew a lease.
Accordingly, the court holds that an apartment which would otherwise be included in the calculation to determine whether the 35% requirement has been met, shall not be excluded because it has become decontrolled pursuant to the Vacancy Decontrol Law. Therefore the determination by respondent to accept the amendment to the plan herein declaring the plan effective was not arbitrary and capricious. The application is denied, the cross motion is granted, and the petition dismissed.