OPINION OF THE COURT
Kristin Booth Glen, J.
The question of first impression presented in this case is whether a mixed-use building may be classified as an “interim multiple dwelling” (IMD) under the new Loft Law (Multiple Dwelling LaWj art 7-C) when the owner has already obtained a residential certificate of occupancy for two of the building’s dwelling units.
This issue arises in the context of a summary holdover proceeding. Jack Ancona, the petitioner landlord commenced this proceeding against Mary Jane Metcalf, the respondent tenant, to recover use and occupancy and regain possession of the second floor premises occupied by the respondent on the grounds that her commercial lease expired on October 31, 1982 and she is holding over without the landlord’s permission. The building in which the subject premises are located at 132 West 26th Street[1] is a four- *52 story structure containing one unit on each floor. The ground floor of the building is occupied by a restaurant. The third and fourth floors are used as apartments for which the prior owner obtained a residential certificate of occupancy. I also find, after trial and upon consideration of the relevant evidence, that the second floor unit was and is used by the respondent as her residence.[2]
Respondent contends that the building qualifies as an “interim multiple dwelling” under the new Loft Law (Multiple Dwelling Law, § 281), entitling her to a right of continued occupancy and the dismissal of this proceeding.
Petitioner argues that the residential certificate of occupancy issued for the third and fourth floors disqualifies the building from obtaining “interim multiple dwelling status.”
Tenants qualify for protection under the Loft Law if they are residential occupants of interim multiple dwellings as defined by section 281 of the Multiple Dwelling Law. In relevant part, that section defines an interim multiple dwelling as “any building or structure or portion thereof * * * which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a [residential] certificate of * * * occupancy pursuant to section three hundred one of this chapter;” and (iii) was occupied for residential purposes on December 1, 1981 by three or more families living independently of one another since April 1,1980; and (iv) is in a zoning district which permits residential use as of right, or by minor modification or administrative certification of a local planning agency. (Emphasis added.) Accordingly, the issuance of a certificate of occupancy pursuant to section 301 of the Multiple Dwelling Law exempts a building from coverage under the new Loft Law.
*53 SECTION 301 OF THE MULTIPLE DWELLING LAW CERTIFICATE OF OCCUPANCY
The Multiple Dwelling Law, enacted in 1929, was adopted by the Legislature in an attempt to alleviate the health and safety hazards posed by the dense occupancy of urban dwellings. In furtherance of this aim, the Multiple Dwelling Law requires all buildings containing three or more dwelling units to comply with a long list of requirements pertaining to light, air, sanitation, safety and fire protection standards. Section 301 of the Multiple Dwelling Law is the statutory mechanism by which compliance with these standards is, in part, guaranteed.[3] Subdivision 1 of this section prohibits the occupancy of a multiple dwelling until the Department of Buildings issues a certificate stating that the dwelling conforms in all respects to the housing requirements set forth in the Multiple Dwelling Law, as well as the building code and rules.
OTHER CERTIFICATES OF OCCUPANCY
All other certificates of occupancy, including the residential certificate of occupancy at issue in the instant case are issued by the Department of Buildings pursuant to section C26-50.0 of the Administrative Code of the City of New York. This section of the Administrative Code prohibits the occupancy or use of any building: “unless and until a certificate of occupancy [has] been issued by the commissioner, certifying that such building conforms substantially to the approved plans and the provisions of the building code and other applicable laws”. Accordingly, under section C26-50.0 a residential certificate of occupancy may be issued for a building containing less than three residential units upon proof of compliance with the building code, which primarily sets forth construction and structural design standards. (See Administrative Code, § C26-400.1 et seq.)
*54 DISCUSSION

The Statute

The purpose of the new Loft Law, as stated in the “Memorandum of Legislative Representative of City of New York” in support of the Loft Law (McKinney’s Session Laws of NY, 1982, pp 2479, 2484) is to “bring order to a chaotic and legally vague process of conversion of loft space formerly used for manufacturing, warehousing, and commercial purposes”, to residential use in a manner which insures compliance with the Multiple Dwelling Law and various other building codes. Balancing the need for the safety and health protections contained in the Multiple Dwelling Law against the difficulty of accomplishing immediate compliance, the new Loft Law provides a scheme for incremental compliance. This scheme, set forth in article 7-C (§ 284, subd 1) requires that the owner of an “interim multiple dwelling”: “(A) shall file an alteration application within nine months from the effective date of the act which added this article, and (B) shall take all reasonable and necessary action to obtain an approved alteration permit within twelve months from such effective date, and (C) shall achieve compliance with the standards of safety and fire protection set forth in article seven-B of this chapter for the residential portions of the building within eighteen months from obtaining such alteration permit or eighteen months from such effective date, whichever is later, and (D) shall take all reasonable and necessary action to obtain a certificate of occupancy as a class A multiple dwelling for the residential portions of the building or structure within thirty-six months from such effective date.” The certificate of occupancy which an owner of an “interim multiple dwelling’ must ultimately obtain is one issued pursuant to section 301 of the Multiple Dwelling Law.
The definition of an “interim multiple dwelling” set forth in section 281 of article 7-C only expressly exempts buildings which have already obtained a section 301 certificate of occupancy for the obvious reason that such buildings have already achieved compliance with the Multiple Dwelling Law, the goal the new Loft Law seeks to accomplish.
*55 Petitioner argues that section 281 should be construed to exempt buildings for which the owner has obtained a residential certificate of occupancy issued pursuant to section C26-50.0 of the Administrative Code. Such a construction is contrary to the express terms of the statute and would entirely undermine its purpose. Under the interpretation of section 281 urged by the petitioner, every illegally converted loft building for which the owner previously obtained a residential certificate of occupancy issued pursuant to section C26-50.0 would be excluded from coverage under the new Loft Law leaving tenants without the extra safety and health protection provided by the Multiple Dwelling Law.[4] Judge Saxe reached the same conclusion in dicta in the only reported case on a similar issue, Greenwich Vil. Assoc. v Salle (NYLJ, March 11, 1983, p 12, col 2). Assuming no difference exists between a residential certificate of occupancy and a certificate of occupancy issued pursuant to section 301 of the Multiple Dwelling Law, Judge Saxe rejected the narrow interpretation of section 281 of the statute stating: “To hold otherwise would mean that loft tenants would be penalized and deprived of any statutory protection solely because their neighbors are already protected. This makes no sense to me. I therefore take the contrary view.” (Supra, p 13, col 1.)
A second reason for a broad interpretation of the Loft Law comes from the very nature of the enactment. The Loft Law is a remedial statute. (See Memorandum of Legislative Representative of City of NY, supra; 465 Greenwich St. Assoc. v Schmidt, NYLJ, Nov. 17, 1982, p 5, col 4.) Generally, remedial statutes are liberally construed to spread their beneficial effects as widely as possible. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 321; Matter of State of New York v Parker, 67 Misc 2d 36, revd on other grounds 38 AD2d 542, affd 30 NY2d 964.) Given the choice of two interpretations of the Loft Law, one restricting coverage and one broadening it, the remedial *56 nature of the legislation forcefully argues for the adoption of the latter course. The purpose of the Loft Law is to legalize the various illegal conversions of commercial, manufacturing and warehouse space in New York to residential use. To the extent the Loft Law is restricted in its coverage, the purpose of the law is defeated.

Loft Board Regulations

On April 11, 1983 the Loft Board promulgated “Coverage Regulations Pursuant to Section 281 of Article 7-C of the Multiple Dwelling Law.” Under these regulations, as well as the court’s independent reading of the statute, the occupancy of third- and fourth-floor units as well as Ms. Metcalf’s may be counted toward the requisite three “families” living separately during the critical window period.
Essentially tracking the statute, section B(2) provides:
“2. Registration as an IMD with the Loft Board shall be required of:
“a. Any building structure or portion thereof, which otherwise meets the criterion for an IMD set forth in Section 281 and these regulations, for all residentially occupied units which lacked a final residential certificate of occupancy issued pursuant to Section 301 of the Multiple Dwelling Law prior to June 21, 1982.”
The regulations continue with section D which is entitled “Calculation of Residential Units”. Subdivision 2 specifically enumerates residential units which may not be included in calculating the requisite three;[5] residential units with other than section 301 certificates of occupancy are notably absent.
In other words, under the Loft Board’s regulations, as well as the statute, units such as those in the subject premises which have a certificate of occupancy issued other than pursuant to section 301 are included in determining IMD status. For this reason as well, the premises are subject to article 7-C of the Loft Law and the respondent is entitled to continued occupancy under section 284 thereof. *57 The petition is, accordingly, dismissed and the other issues raised by respondent need not be determined.

. The premises are located in a zoning area which permits residential use as of *52 right, providing a grandparenting application was filed with the city planning board by June 21, 1983. After the trial concluded, respondent filed the appropriate application. Since my finding that the respondent was the residential occupant on September 1,1980 is presumably res judicata, there is no longer any question that the premises come within section 281 (subd 2, par [i]) of the Loft Law, and only the question of whether there are the requisite three units remains.

. I credit the testimony of Ms. Metcalf, which was essentially unrebutted, that she resided in the premises from 1960. This testimony was somewhat corroborated by the former third-floor tenant Charles Cluxton. While the knowledge of the landlord is irrelevant to article 7-C coverage, there was also evidence that the prior owner was fully aware of her residential occupancy.

. Compliance with the Multiple Dwelling Law is additionally secured by sections 302, 302-a and 304 of the statute. Section 302 (subd 1, par b) prohibits an owner from commencing a summary proceeding or an action to recover rent or to recover possession for nonpayment of rent for any period during which a dwelling is occupied in violation of section 301 of the Multiple Dwelling Law. Section 302-a provides for an abatement of rent for any “rent impairing” violation. A “rent impairing” violation is any condition which if not promptly corrected would constitute a fire hazard or a serious threat to the life, health or safety of the building’s occupants. Section 304 sets forth the penalties which may be imposed for the violation of any provision of the Multiple Dwelling Law.

. This construction of the statute would also cast landlords and tenants back into the legal vacuum that existed prior to the enactment of the Loft Law. Again creating a situation described by the Appellate Division as “a constant war of nerves * * * between landlords and tenants * * * in which, on the one hand, tenants are left without services, and, on the other, landlords sometimes do not receive rent for years.” (Corris v 129 Front Co., 85 AD2d 176, 179.)

. These include joint living work quarters for artists and units designated commercial use with accessory residential use. To the extent that exclusion of such units may go beyond the language of article 7-C, their exclusion by the Loft Board is arguably ultra vires, but that question need not be determined here.