OPINION OF THE COURT
Helen E. Freedman, J.
Does article 7-C of the Multiple Dwelling Law (Loft Law) cover premises having the following history? Until 1970 the top three floors of the premises were a class B lodging house divided into numerous cubicles. For a period thereafter one of those floors was used for storage purposes while the other two were vacant. Currently each of the three floors is a residential loft. The ground floor has been occupied continuously as commercial space. The only certificate of occupancy on record is a 1949 certificate classifying the premises as a class B lodging house.
Coverage under the Lqft Law has been raised as a defense by the residential tenants, Grant, Nelson and Sherry, in a motion to dismiss this holdover proceeding. They claim that the residential portion of the building is an interim multiple dwelling (IMD), and that their tenancies are protected by section 286 of the Multiple Dwelling *986 Law, which provides that qualified tenants are entitled to continued occupancy. In order to qualify for protection the premises must meet the requirements set forth in section 281 of the Multiple Dwelling Law. It is not disputed that the three floors in question have been used as the residence of three families living independent of one another at least since April, 1980, as required by section 281 (subd 1, par [iii]) of the Multiple Dwelling Law, and that the building meets the zoning requirements of subdivision 2 of section 281. The two aspects of coverage which are in dispute are whether the relevant portion has been used for commercial purposes as required by section 281 (subd 1, par [i]) and whether the building lacks a certificate of occupancy pursuant to section 301 of the Multiple Dwelling Law as specified in section 281 (subd 1, par [ii]).
In determining whether respondents’ lofts constitute an IMD this court will consider the underlying policy of the loft legislation and the particular facts of this case in light of the statute. The motions by the commercial tenants will be discussed below.
In enacting the Loft Law the Legislature found that “a serious public emergency * * * has been created by the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance with applicable building codes and laws” and that “in order to prevent uncertainty, hardship, and dislocation, the provisions of this article are necessary and designed to protect the public health, safety and general welfare.” (Multiple Dwelling Law, § 280.) The statute establishes the rights and obligations of owners and tenants and sets forth a schedule for achieving compliance with building standards, leading to issuance of a final residential certificate of occupancy pursuant to section 301 of the Multiple Dwelling Law.
Realizing that the primary objective of the Loft Law is to protect the safety and welfare of the public in general and of tenants of substandard converted residential lofts in particular, the court will address the two specific requirements of subdivision 1 of section 281 which bear on this case.
*987 The relevant section of the Loft Law provides in pertinent part: “the term ‘interim multiple dwelling’ means any building or structure or portion thereof * * * which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a certificate of compliance or occupancy pursuant to section three hundred one of this chapter”. (Multiple Dwelling Law, § 281, subd 1.)
The first issue is whether the commercial use requirement of section 281 (subd 1, par [i]) has been satisfied. It appears that the first floor has always been commercial and that for some time the second floor was used for storage or warehousing by the ground floor tenant. Petitioner has not disputed the storage use of the second floor, and this court finds that it clearly comes within the statutory provision requiring commercial use.
Petitioner argues however that even if the second floor was used commercially, that should not protect the third and fourth floors which, it claims, were never used commercially. Rather, petitioner claims that the second, third and fourth floors together comprised the residential hotel. However, records of the Department of Housing Preservation and Development indicate that at least for a period of time the third and fourth floors were vacant, and that they were then used as studios. The last possible time the building functioned as a hotel was 1970. Thus the use of the third and fourth floors during the intervening period at issue is, at best, unclear. The evidence reveals that at some time those floors were no longer used as a hotel, that the partitions were removed, and that the space remained vacant for a certain period. There was clearly a time gap between the hotel use and the current residential use.
Under these peculiar circumstances the second, third and fourth floors should be viewed as an entity, since those floors together constituted the hotel. The use of one of those floors for commercial purposes qualifies as commercial use of the relevant “portion” and satisfies section 281 (subd 1 par [i]).[1] The fact of prior residential use is of no significance on the issue of whether section 281 (subd 1, par [i]) is *988 satisfied because that section specifically states that commercial use “at any time” is sufficient.
The second question presented here is whether the 1949 certificate of occupancy is still valid as petitioner claims. If, as petitioner urges, the certificate is considered valid, the Loft Law would not protect the respondents. On the other hand, if the certificate is found insufficient for purposes of section 281 (subd 1, par [ii]) then respondents’ lofts would be covered. “Given the choice of two interpretations of the Loft Law, one restricting coverage and one broadening it, the remedial nature of the legislation forcefully argues for the adoption of the latter course.” (Ancona v Metcalf, 120 Misc 2d 51, 55-56.)
For the following reasons this court finds that the 1949 certificate of occupancy is of no force or effect. The purpose of requiring a final certificate of occupancy pursuant to section 301 of the Multiple Dwelling Law is to insure that residential tenants of converted lofts will have the benefit of health and safety regulations applicable to other multiple dwellings. Such a certificate is an official statement that the premises meet the many standards of light, air, safety, etc., mandated by law. Only buildings which have obtained final certificates of occupancy under section 301 are exempt from article 7-C because only those buildings have “achieved compliance with the Multiple Dwelling Law, the goal the new Loft Law seeks to accomplish.”[2] (Ancona v Metcalf, supra, at p 54.)[3] To allow the petitioner to rely on and benefit from this outdated certificate of occupancy, and on its own failure to comply with an order to obtain a new certificate, would contravene the intent of article 7-C.
Moreover the particular facts of this case warrant the conclusion that the 1949 certificate of occupancy is of no use in avoiding section 281 (subd 1, par [ii]). There is a violation of record indicating that the certificate of occupancy had lapsed, and that a new one was required before *989 occupancy could resume. The nature and character of the residential use described in the certificate is totally different from the current use. A hotel with numerous cubicles on each of the three floors differs substantially from a residential loft. After a period of commercial use the three floors are now the residences of three separate families living independent of one another. This is precisely the type of tenancy the Loft Law was designed to protect.
Inasmuch as the requirements of section 281 (subd 1, pars [i], [ii]) have been met, the petition is dismissed as to respondents Grant, Nelson and Sherry.
The commercial tenants have also moved to dismiss the petition. Petitioner brought this holdover proceeding against its prime tenant Bass and Bass, Inc. (Bass), claiming that the lease was properly terminated when, after due notice, Bass failed to correct certain violations. It argues that the subtenancy of Sam Tell and Son, Inc. (Tell), was therefore terminated as a matter of law.
Respondent Tell has moved to dismiss claiming that neither Tell nor Bass ever received notice of the alleged violations because petitioner’s principal was the agent of record who received such notices; that Tell was not given an opportunity to cure Bass’ default and assume the obligations of the prime lease; and that the proceeding is brought in bad faith in order to avoid the provisions of the Loft Law.
Respondent Bass joins in the motion adding that the violations are so old that petitioner has waived its right to seek Bass’ eviction for failure to cure violations. Bass claims that petitioner simply wants to regain possession of the building because its value has substantially increased.
The motions of the commercial tenants are denied because there are issues of fact requiring a trial. The nature of the violations, notice of them, and responsibility for cure should be determined at a plenary hearing.
With respect to Toll’s motion to quash petitioner’s notice to produce, respondent Tell is directed to produce any and all leases between Tell and Bass.
Petitioner’s motion to strike Tell’s jury demand is granted, inasmuch as the sublease is derived from the main lease which contains a valid jury waiver clause.
*990 In view of the considerable time that has elapsed since submission of this motion, petitioner is hereby permitted to accept and deposit rent, unless and until the trial court orders otherwise. The residential tenants are of course subject to a nonpayment proceeding pursuant to section 285 of the Multiple Dwelling Law should they fail to pay rent.
Matter adjourned as to Bass and Tell to Part 52 for trial on February 2, 1984.

. The commercial use of the ground floor does not render the upper three floors an IMD inasmuch as the ground floor always was, and continues to be, used exclusively for commercial purposes.

. Further evidence of the goals of the loft legislation may be found in the Rules and Regulations of the Loft Board, promulgated pursuant to the statute, which in section I (B) provides that only final residential certificates of occupancy qualify for exemption and then only if the certificate of occupancy has not been revoked.

. Similarly, in Ancona v Metcalf (120 Misc 2d 51), the court refused to exempt buildings with temporary certificates of occupancy issued pursuant to section C26-50.0 of the Administrative Code of the City of New York.