In the Matter of ASSOCIATION OF COMMERCIAL PROPERTY OWN-ERS, INC., et al., Respondents, v NEW YORK CITY LOFT BOARD et al., Appellants.

First Department, July 17, 1986

### APPEARANCES OF COUNSEL

*Mordechai Lipkis* of counsel *(William H. Morris* with him on the brief; *Morris, Graham, Stephens & McMorrow,* attorneys), for respondents.

*Kristin M. Helmers* of counsel *(Stephen J. McGrath* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

### OPINION OF THE COURT

SANDLER, J. P.

The respondent New York City Loft Board appeals from an order and judgment entered October 2, 1984 by Special Term (Orest V. Maresca, J.), which, *inter alia,* declared null and void a regulation which in substance exempted from coverage under the Loft Law (Multiple Dwelling Law §§ 280-287) any otherwise eligible loft unit that had been issued a temporary residential certificate of occupancy (TCO) prior to June 21, 1982, unless the TCO lapsed for any reason on or after that date. We disagree with Special Term's determination because there has been a complete failure to demonstrate that the regulation, adopted after careful and thoughtful consideration by a body with special competence in the area, is inconsistent with either the language or the purposes of the Loft Law.

The regulation here at issue, adopted by the Loft Board on July 20, and filed with the City Clerk on August 2, 1983, reads as follows:

"I.B.2. Registration as an IMD [interim multiple dwelling] with the Loft Board shall be required of * * *

"b. Any building, structure or portion thereof which meets the criteria for an IMD set forth in Section 281 and these regulations, for all residentially-occupied units which obtained a temporary, but not final, residential certificate of occupancy issued pursuant to Section 301 of the Multiple Dwelling Law prior to June 21, 1982. Issuance of a temporary residential certificate of occupancy for such units prior to June 21, 1982, will not be the basis for exemption from Article 7-C coverage

if on or after June 21, 1982 a period of time of any length existed for whatever reason whatsoever during which a temporary or final certificate of occupancy issued pursuant to Section 301 of the Multiple Dwelling Law was not in effect for such units."

Petitioner Eliahu Lipkis is the owner of three loft buildings which had been issued TCO's for some or all of their residential units at some time prior to June 21, 1982, but did not have TCO's in effect on or after that date, and so would be deemed interim multiple dwellings under the regulation. The other two petitioners, a not-for-profit corporation whose membership consists of owners of loft buildings in New York City, and that corporation's president, were removed by Special Term as parties, but the papers submitted on their behalf were treated as submissions *amicus curiae*.

Special Term converted the petitioners' CPLR article 78 proceeding to a declaratory judgment action and granted all the relief requested in an order and judgment which (1) declared regulation I.B.2 (b) null and void; (2) declared that Multiple Dwelling Law article 7-C does not apply to any building issued a temporary certificate of occupancy at any time on or prior to June 21, 1982, regardless of any lapses in such TCO, unless the Department of Buildings revoked the TCO nunc pro tunc for willful fraud or refused to renew it on the ground that the conditions on which the TCO had been initially issued were not satisfied; (3) prohibited the Loft Board from attempting to exercise jurisdiction over said buildings unless the Department of Buildings revoked or refused to renew the TCO's on the grounds described above; and (4) declared that article 7-C does not apply to any residential units in three buildings owned by petitioner Eliahu Lipkis for which TCO's had been issued before June 21, 1982.

The order and judgment should be reversed to the extent appealed from (one building, not among the three mentioned above, was held subject to art 7-C), the regulation should be declared valid, and the three loft buildings owned by petitioner Lipkis should be declared subject to article 7-C and the jurisdiction of the Loft Board.

The fundamental test to be applied in such matters is that "where the rules or regulations of an administrative agency are in conflict with the provisions of the statute or inconsistent with its design and purpose, they are to be held invalid." *(Connolly v O'Malley,* 17 AD2d 411, 417.) In *Ostrer v Schenck*

(41 NY2d 782, 786) the Court of Appeals summarized succinctly the standards governing the application of this test by a reviewing court in determining the validity of a challenged regulation: "The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation 'is so lacking in reason for its promulgation that it is essentially arbitrary.' *(Matter of Marburg v Cole,* 286 NY 202, 212.) The interpretation given a statute by the administering agency 'if not irrational or unreasonable, should be upheld.' *(Matter of Howard v Wyman,* 28 NY2d 434, 438.) As was observed in *Mississippi Val. Barge Co. v United States* (292 US 282, 286-287), '[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' "

Multiple Dwelling Law article 7-C (the Loft Law) was enacted by the New York State Legislature by Laws of 1982 (ch 349). The legislation, entitled "Legalization of Interim Multiple Dwellings" was declared effective June 21, 1982. As here pertinent, Multiple Dwelling Law § 280 ("Legislative Findings") states that a serious public emergency, "created by the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance with applicable building codes and laws and without compliance with local laws regarding minimum housing maintenance standards", necessitated intervention by State and local governments to effectuate legalization.

Article 7-C, by its own terms, applies to "interim multiple dwellings". Multiple Dwelling Law § 284 requires the owner of each interim multiple dwelling to adhere to a timetable for obtaining a final residential certificate of occupancy. Multiple Dwelling Law § 281 (1) defines an interim multiple dwelling, in pertinent part, as "any building or structure or portion thereof located in a city of more than one million persons which * * * (ii) lacks a certificate of compliance or occupancy pursuant to section three hundred one of this chapter".

Multiple Dwelling Law § 301 (1) describes a certificate of compliance or occupancy (CO) as a "certificate by the department [of buildings] that said dwelling conforms in all respects to the requirements of this chapter [the Multiple Dwelling Law], to the building code and rules and to all other applicable law". Multiple Dwelling Law § 301 (4) permits the Department to issue a temporary certificate of compliance or occupancy (TCO) for a period of 90 days or less, renewable for similar periods at the discretion of the Department, but not

beyond two years from the date of original issuance. A TCO certifies that the dwelling complies with the requirements of the Multiple Dwelling Law and that temporary occupancy will not jeopardize life, health or property, i.e., the dwelling need not also comply with the Building Code and rules and all other applicable law, as required for issuance of a CO.

Multiple Dwelling Law § 282 establishes a special loft unit known as the Loft Board (the primary respondent in this action) consisting of representatives of the public, the real estate industry, loft residential tenants, and commercial or manufacturing loft interests, all appointed by the Mayor. Among its varied and important responsibilities, and particularly pertinent to this appeal, the Loft Board is specifically empowered by Multiple Dwelling Law § 282 to "[determine] interim multiple dwelling status and other issues of coverage pursuant to this article", and to issue and enforce rules and regulations governing housing maintenance standards and compliance with article 7-C.

In accordance with the statutory duties granted to it, the Loft Board and its staff addressed the issue of whether, and under what circumstances, the existence of a TCO for a loft unit should constitute an exemption from interim multiple dwelling status. The Loft Board and its staff analyzed and debated the issue over a period of months, during which period a draft regulation exempting only buildings possessing a CO (as opposed to a TCO) on or prior to June 21, 1982, was published in the *City Record,* with an invitation to the public to submit written comments. Public testimony on the proposed regulation was also received at a public hearing held on February 28, 1983.

In their written and oral comments, tenants urged that only buildings possessing a final CO on or before June 21, 1982 should be exempt from the Loft Law, since a TCO does not include a certification of conformity with the Building Code and rules and to all other applicable law, and buildings lacking such certification are specifically mentioned in Multiple Dwelling Law § 280 as among those intended to be governed by article 7-C. Landlords urged that any loft building that had been issued a TCO prior to June 21, 1982 was basically "legal", that lapsed TCO's were routinely renewed without reinspection by the Buildings Department, and so the lapsing of a TCO was meaningless unless it had been revoked for cause.

Preliminarily, it should be observed that there are meaningful distinctions between a CO and a TCO, and that article 7-C read as a whole may reasonably be interpreted as contemplating that a loft building shall remain under the jurisdiction of the Loft Board until a final CO is obtained. Moreover, Multiple Dwelling Law § 281 (1) (ii) exempts buildings with a "certificate of compliance or occupancy pursuant to section three hundred one of this chapter", not buildings with a "temporary certificate of compliance or occupancy". Accordingly, a strong argument could be made that as a matter of statutory construction the Loft Board would have been justified in promulgating the draft regulation, which was significantly less favorable to landlords, exempting from article 7-C only buildings that had a CO on June 21, 1982. However, we need not determine that hypothetical issue since regulation I.B.2 (b), as promulgated, conditionally exempts from registration any building issued a TCO effective prior to June 21, 1982, the only condition being that the TCO remained in effect on and after that date.

At least with regard to two of petitioner Lipkis' buildings (47 and 49 Walker Street), the TCO's for which lapsed prior to June 21, 1982 and were not in effect on that date, the challenged regulation unquestionably complies with the meaning of Multiple Dwelling Law § 281 (1) (ii) by including those buildings within the jurisdiction of the Loft Board. Certainly there is no authority that permits a court to strike down as null and void a regulation that enforces compliance with the plain meaning of a statute.

The only question that may be deemed even arguable is the regulation's reasonableness and conformity with the statutory purpose insofar as it applies to petitioner Lipkis' building at 71-73 Franklin Street, which had a TCO in effect on June 21, 1982, but not at various times thereafter. We see no basis for concluding that the Loft Board, which pursuant to Multiple Dwelling Law § 282 is specifically delegated the duty to determine interim multiple dwelling status and other issues of coverage under article 7-C, unreasonably construed the statute as appropriately embracing such buildings within its scope.

The record discloses conflicting opinions as to the significance of the lapsing of a TCO and whether lapsed TCO's are routinely renewed without reinspection. In this regard Irving E. Minkin, Deputy Commissioner of the Department of Buildings of the City of New York and a member of the Loft Board,

stated under oath and without contradiction that any applicant for a TCO renewal, whose loft unit would have been exempted from article 7-C but for the lapse in its TCO due to a Department backlog or some other factor not in the applicant's control, could apply to the Borough Superintendent and, if denied, appeal to the Commissioner to reinstate the TCO nunc pro tunc. There is no basis for presuming that such an application would be arbitrarily denied, and in any event such denial would be reviewable in an article 78 proceeding.

Special Term's order and judgment would effectively require the Department of Buildings to determine on a case-by-case basis the conditions existing in any building with a lapsed TCO at the time of such lapse, in order to declare whether the building at the time in question satisfied the conditions on which the TCO had originally been issued. We do not believe that the statute or its underlying purpose can fairly be construed to require such a procedure in the face of what appears to be a reasonable determination by the Loft Board that a building that "lacks" a CO or TCO on or after June 21, 1982 is an interim multiple dwelling as defined in Multiple Dwelling Law § 281 (1) (ii) even if it had an effective TCO at some prior time.

Article 7-C, being remedial legislation, should be liberally construed to spread its beneficial effects as widely as possible. "Given the choice of two interpretations of the Loft Law, one restricting coverage and one broadening it, the remedial nature of the legislation forcefully argues for the adoption of the latter course * * * To the extent the Loft Law is restricted in its coverage, the purpose of the law is defeated." *(Ancona v Metcalf,* 120 Misc 2d 51, 55-56; *see also, 300 Bowery v Bass & Bass,* 122 Misc 2d 985, 988; *Pilgreen v 91 Fifth Ave. Corp.,* 91 AD2d 565, 566.)

Since there clearly exists a rational basis for the regulation in light of the statutory language that it effectuates and the canons of statutory construction applicable to remedial legislation, the order and judgment (one paper) of Special Term (Orest V. Maresca, J.), entered October 2, 1984, should be reversed to the extent appealed from, on the law, without costs, the regulation should be declared valid, and the three loft buildings owned by petitioner Lipkis should be declared subject to article 7-C and the jurisdiction of the Loft Board.

KASSAL, J. (dissenting). The enactment of Multiple Dwelling Law article 7-C, effective June 21, 1982 (the Loft Law), was

designed to "bring order to a chaotic and legally vague process of conversion of loft space formerly used for manufacturing, warehousing, and commercial purposes", to foster conversion to residential use, thus ensuring compliance with the Multiple Dwelling Law and applicable building codes (memorandum of Legislative Representative of City of NY, 1982 McKinney's Session Laws of NY, at 2484). Multiple Dwelling Law § 281 created a new category of building to be known as an "interim multiple dwelling" and defined the term as "any building or structure or portion thereof * * * which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a certificate of compliance or occupancy pursuant to section three hundred one of this chapter; and (iii) on December first, nineteen hundred eighty-one was occupied for residential purposes since April first, nineteen hundred eighty as the residence or home of any three or more families living independently of one another." (Multiple Dwelling Law § 281 [1].)

The issue in this proceeding, appropriately converted by Special Term to an action for a declaratory judgment, concerns the construction of Multiple Dwelling Law § 281 (1) (ii). Specifically, it relates to the application of the statute to certain buildings or units which had been issued a temporary residential certificate of occupancy (TCO) prior to June 21, 1982, but which TCO had expired either before renewal or issuance of a final certificate of occupancy, under the terms of a regulation adopted by the Loft Board on July 20, 1983. The regulation provided that the issuance of a TCO prior to June 21, 1982, would not be the basis for exemption from coverage under article 7-C if, on or after that date, there was any period of time during which a temporary or final certificate of occupancy issued under Multiple Dwelling Law § 301 was not in effect, "for whatever reason whatsoever".

Each of the three buildings involved in this action had been issued a TCO prior to June 21, 1982, pursuant to Multiple Dwelling Law § 301. Since there also had been compliance with the other statutory requirements, these buildings were exempt from the provisions of article 7-C. At the time this proceeding was commenced on December 2, 1983, each building had been covered by a TCO which had expired during the period in which petitioner's applications for renewal were pending, but had not been acted upon by the Department of Buildings. The record does not disclose the basis for such failure to renew. Applying the 1983 regulation, which is

herein challenged, the Loft Board held that the lapse in the TCO rendered the units and the buildings subject to coverage under article 7-C. Accordingly, petitioner brought this action to annul the regulation and to declare these buildings exempt from coverage under the Loft Law.

We agree with Special Term that the Loft Board exceeded its statutory authority in adopting the regulation. In defining an interim multiple dwelling, the Legislature provided in Multiple Dwelling Law § 281 (1), as one of the critical determinants, that the building or unit "lacks a certificate of compliance or occupancy" issued pursuant to Multiple Dwelling Law § 301. While recognizing that there are clear differences between a permanent certificate of occupancy and a temporary certificate, it is significant that both are issued under Multiple Dwelling Law § 301 and the statutory provision, defining an interim multiple dwelling, makes no distinction between the two. Had the Legislature intended coverage to be dependent upon the continued existence of a valid TCO, without any lapse for any period of time and irrespective of the reason, it would have expressly so stated. However, Multiple Dwelling Law § 281 (1), couched in the present tense, refers only to the existence of a certificate of occupancy, not to a subsequent lapse. Although we recognize that deference in interpreting regulations is to be accorded to the Loft Board in its broad administrative power, the Board's authority does not extend to declaring legislative policy but rather, only to applying the statutory standard in an administrative capacity *(cf. Axelrod Co. v Dixon Studio,* 122 Misc 2d 770).

In enacting the Loft Law, the Legislature expressly recognized the need to alleviate the serious public emergency in housing. There was concern regarding the increase in the conversion of lofts in commercial and manufacturing buildings to residential use without compliance with building codes and rules, but with the further objective of assuring that minimum standards for health, safety and fire protection be maintained. As a result, the statute legalized residential loft tenancies, thereby affording needed safety and housing to tenants who were permitted to reside there, under the aegis of rent stabilization. At the same time, it provided aid to the owners who, without this enactment, could not legally collect rents through the use of summary proceedings in the absence of residential certificates of occupancy.

Special Term, however, found that the challenged regulation failed to promote these legislative purposes in that lapses

in TCO's may occur for a variety of administrative reasons, without any bearing upon the health and safety criteria which the Legislature determined to be critical. Furthermore, the record reflects that TCO's have been routinely renewed by the Department of Buildings without reinspection even where the owner inadvertently failed to file for renewal until after expiration of the 90-day period during which a TCO is in effect. Thus, Special Term took into account the real possibility that lapses do result from bureaucratic delay and failure in processing renewal applications which would subject the building to the coverage of the Loft Law under the regulation.

In our view, as held at Special Term, it is necessary to consider the reason for such lapse. Thus, the court limited the imposition of loft regulation to those situations where there was a lapse as a result of a revocation of the TCO on a finding of fraud or where renewal was denied because the owner did not satisfy the conditions upon which the temporary certificate had originally been issued. We agree with that interpretation.

As applied here, absent a showing of fraud or noncompliance with any conditions required at the time of issuance of the temporary certificates, Special Term properly declared that Multiple Dwelling Law article 7-C did not apply to petitioner's three buildings. While mindful of the laudable purpose underlying the Board's adoption of the regulation, we find its promulgation to be legislative in scope and beyond the limited administrative powers which the Legislature has entrusted to the Loft Board. We so conclude, no matter how "careful and thoughtful" the promulgation of this rule may have been, as characterized by the majority. This is especially so when we note that the primary administrative jurisdiction over buildings in terms of lapsed temporary certificates is entrusted to the Department of Buildings, as the agency responsible for enforcing building codes and rules, not the Loft Board.

Accordingly, the order and judgment appealed from (one paper), Supreme Court, New York County (Orest V. Maresca, J.), entered October 2, 1984, which, *inter alia*, (1) declared invalid a July 20, 1983 regulation of the Loft Board, directing that certain buildings and individual units which had been issued temporary residential certificates of occupancy (TCO) on or before June 21, 1982, were, nonetheless, subject to the provisions of Multiple Dwelling Law article 7-C, if there existed a period of time of any length, for any reason whatso-

ever, during which a temporary or final certificate of occupancy issued pursuant to Multiple Dwelling Law § 301 was not in effect; (2) declared that Multiple Dwelling Law article 7-C did not apply to any building or unit issued a TCO on or before said date, regardless of any subsequent lapse in such TCO unless the TCO was revoked, nunc pro tunc, by the City Department of Buildings upon a finding of willful fraud or where the Department refused to renew the TCO on the ground that the conditions on which the temporary certificate of occupancy had been initially issued had not been satisfied; (3) prohibited the Loft Board from exercising jurisdiction over such buildings unless the Department of Buildings had revoked or refused to renew the TCO on said grounds; and (4) declared that article 7-C did not apply to residential units in three specific buildings owned by petitioner Eliahu Lipkis, located at 47 and 49 Walker Street and 71-73 Franklin Street, should be affirmed.

ASCH, ELLERIN and WALLACH, JJ., concur with SANDLER, J. P.; KASSAL, J., dissents in an opinion.

Order and judgment (one paper), Supreme Court, New York County, entered on October 2, 1984, reversed to the extent appealed from, on the law, without costs and without disbursements, the judgment vacated, the regulation declared valid, and the three loft buildings owned by petitioner Lipkis declared subject to article 7-C and the jurisdiction of the Loft Board.