In the Matter of JEROME SCHENKMAN et al., Appellants, v GEORGE DOLE, as Chairman of the New York City Loft Board, et al., Respondents.

First Department, July 13, 1989

## APPEARANCES OF COUNSEL

*David Ratner* of counsel *(Hartman, Ule, Rose & Ratner,* attorneys), for appellants.

*Elizabeth I. Freedman* of counsel *(Francis F. Caputo* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for George Dole, respondent.

*Bruce H. Wiener* of counsel *(Fischbein Badillo Schwarz Barer Wiener Gruskin & Lederman,* attorneys), for Irene Duell and another, respondents.

## OPINION OF THE COURT

ELLERIN, J.

Petitioners, residents of the third-floor unit at the subject premises, 102 West 14th Street, submitted an application to the New York City Loft Board seeking coverage pursuant to Multiple Dwelling Law article 7-C, commonly referred to as the Loft Law, claiming that the premises qualified for protection as an "interim multiple dwelling" (IMD) as defined by

that statute. At issue on this appeal is the propriety of the Loft Board's denial of that application.

The criteria necessary for a building to qualify as an "interim multiple dwelling" subject to the Loft Law are set forth in Multiple Dwelling Law § 281 (1). Those requirements are that the building (1) was at any time occupied for manufacturing, commercial, or warehouse purposes; (2) lacks a certificate of compliance or occupancy as a multiple dwelling pursuant to Multiple Dwelling Law § 301; (3) was occupied during the "window period", April 1, 1980 through December 1, 1981, for residential purposes by three or more families living independently; and (4) is located in a zoning area which permits residential use.

In the instant case, the inquiry at the hearing before the Loft Board was whether the petitioners' building met these criteria. Uncontroverted documentary evidence established three of the four necessary elements—that the building was once used for commercial purposes; that the building lacked a certificate of occupancy pursuant to Multiple Dwelling Law § 301; and that the building was located in a C-6 zoning area, which permits residential use as of right. The major issue in contention at the hearing was whether there were three or more families living independently of one another in the premises from April 1, 1980 to December 1, 1981, the "window period".

The evidence adduced at the hearing indicates that 102 West 14th Street is a four-story building with one unit per floor and that a certificate of occupancy pursuant to Administrative Code of the City of New York § C26-50.0, issued in 1962, provides for a restaurant on the first floor, a private card club on the second floor, and one residential apartment each on the third and fourth floors. Substantial evidence was presented to establish that both the third and fourth floor units were residentially occupied during the "window period", the third floor by the petitioners, and the fourth floor by other parties. Much of the hearing focused on the nature of the occupancy of the second floor unit during that period, i.e., from April 1, 1980 through December 1, 1981. One Michael Goldberg testified that he resided there from May 1979 until January 1982, when he moved out. Substantial documentary evidence was introduced to support his testimony, including voter registration cards and the like, and, ironically, legal papers issued in connection with two summary nonpayment of rent proceedings brought against Mr. Goldberg during this

period, in which the landlord alleged that the premises were used as a dwelling.

The Loft Board thereafter issued its determination in order No. 692. The Board expressly found that the petitioners and their witnesses were credible, and that it was proven by substantial evidence that three units had been independently occupied residentially throughout the window period, and that the premises otherwise met the requirements of an interim multiple dwelling pursuant to Multiple Dwelling Law § 281 (1) and (2). However, an additional finding was made by the Board, that on June 21, 1982, the date of the enactment of the Loft Law, the second floor unit had reverted to commercial use, thereby putting the building back in compliance with its certificate of occupancy, and that, as a consequence, the building did not merit coverage under the Loft Law. The petitioners' administrative application for reconsideration of this decision was denied in pertinent part.

Petitioners thereafter timely commenced this CPLR article 78 proceeding to challenge the Board's determination. The IAS court adopted the reasoning of the Loft Board and denied and dismissed the petition. The court, as did the Loft Board, focused upon the 1962 certificate of occupancy issued pursuant to Administrative Code § C26-50.0, which permitted residential use of the third and fourth floors and commercial use of the second floor and found that on the date of the enactment of the Loft Law the building was in fact in compliance with its certificate of occupancy since the second floor had reverted to commercial use, and, therefore, the goals of the Loft Law had been achieved.

Petitioners contend that the administrative determination is not supported by evidence in the record, and that it applies an erroneous standard for determining whether the building was an interim multiple dwelling within the meaning of the Loft Law. For the following reasons, we agree with the petitioners' position and reverse the denial of this article 78 petition.

A review of the record indicates that there is no factual predicate to support the Board's determination. At the hearing, the inquiry properly focused on the residential occupancy of the second-floor unit during the window period—i.e., April 1, 1980 to December 1, 1981. While it was conclusively established that Mr. Goldberg lived in the unit throughout that period, and that he moved out in January 1982, no further

evidence was taken with respect to the nature of the occupancy of the unit after his departure. Indeed, when the petitioners' attorney and the landlord's attorney, each separately sought to introduce evidence as to the nature of the use and occupancy of the second floor at later dates in 1982, the Hearing Officer excluded such evidence as irrelevant because it was beyond the window period.

It is clear, therefore, that the record contains no evidence whatsoever regarding the status of the second-floor unit on June 21, 1982, and that the Loft Board's finding that the second-floor unit was commercially used on that date is without any factual underpinning. Yet, the Loft Board's ultimate determination in this matter was predicated almost entirely upon such a finding. Since this finding of fact, which the Loft Board itself considered crucial, is without any foundation in the evidence, the Loft Board's determination, on this ground alone, must be held to lack a rational basis requiring that it be annulled. (See, Matter of Sled Hill Cafe v Hostetter, 22 NY2d 607.)

Of even greater significance, however, is the infirmity of the legal basis upon which the Loft Board's determination is predicated. The nature of the use of the second-floor unit on June 21, 1982 is irrelevant to this proceeding and should not, in any event, have been considered.

The Legislature enacted the Loft Law in 1982 to address the problems created by the conversions of commercial and manufacturing buildings to residential use without compliance with applicable building codes and laws (Multiple Dwelling Law § 280). In enacting the law, a calculated legislative choice was made to limit the law's applicability to buildings that met the relevant criteria during a precisely delineated time frame. To qualify for "interim multiple dwelling" status the statute requires that on December 1, 1981 there have existed in the building three or more independent residences since April 1, 1980 (Multiple Dwelling Law § 281 [1] [iii]). In establishing this time frame as a determinative factor, the statute further expressly provides that "[a] reduction in the number of occupied residential units in a building after December first, nineteen hundred eighty-one shall not eliminate the protections of this article for any remaining residential occupants qualified for such protections" (Multiple Dwelling Law § 281 [3]). Pursuant to the clear terms of the statute, the only issue is whether the building was occupied residentially by three

families during the narrow window period, and not whether the building was so occupied before or after that period. Thus, even if the second-floor unit were no longer residentially occupied after the window period (a fact not established in the record), it would have no bearing on this case and would not eliminate protections of the Loft Law for which the building otherwise qualifies.

By imposing, as reflected in its order, a further qualification with respect to the extent of residential occupancy in the building on June 21, 1982, the Loft Board unilaterally and impermissibly engrafted an additional eligibility requirement not contained in the enabling legislation. The eligibility requirements for Loft Law coverage are exclusively set forth in Multiple Dwelling Law § 281 (1) and (2) and that statute affords no discretion to the Board to interpose any additional governing criteria. *(See, Kaufman v American Electrofax,* 102 AD2d 140.) Any adjustments or alterations to the statute must come from the Legislature and the Board cannot seek to accomplish what it perceives to be a more tenable result by way of ignoring, or amending, the clear statutory mandate.

■ While not essential to the instant determination, some comment is required with respect to the Loft Board's conclusion that the building was "code compliant" on the effective date of the statute because the second floor had by then reverted to commercial use thereby bringing the building into compliance with its 1962 residential certificate of occupancy and outside the intent of the Loft Law as expressed in Multiple Dwelling Law § 280. As already indicated, the record is barren of any evidence as to the actual status of the second floor on June 21, 1982, and, therefore, even the conclusion as to the building's then compliance with its certificate of occupancy is, at the very least, flawed. More significant, however, is the misperception of both the agency and the IAS court as to the import of the building's compliance with the certificate of occupancy issued by the New York City Department of Buildings in relation to the "code compliance" required under the Loft Law. The Building Department's certificate of occupancy merely sets forth the authorized use of the premises, and compliance therewith requires only that the actual use be consistent with the authorized use. The certificate of compliance or occupancy under Multiple Dwelling Law § 301, on the other hand, requires compliance with a variety of health and building safety codes and standards applicable to multiple dwellings for the protection of those who reside therein. It is

the latter certificate, Multiple Dwelling Law § 301, which the Loft Law expressly requires and which was here lacking.

The Preamble to the Loft Law (Multiple Dwelling Law § 280) sets forth the legislative concern with ensuring that buildings which are within the law's purview comply with applicable building codes, local laws regarding minimum housing maintenance standards, and minimum standards for health, safety and fire protection. In that context, bare compliance by a building with the use provisions of the residential New York City certificate of occupancy would not be coextensive with the over-all remedial health and safety goals of the Loft Law. *(See, Ancona v Metcalf,* 120 Misc 2d 51.) For this reason it has been held, by the Loft Board itself, that in a mixed building, which otherwise qualifies for IMD status, residential units which have been occupied in compliance with a residential certificate of occupancy will, nevertheless, be counted toward the minimum number of residential units required for Loft Law coverage. *(Matter of Morgan,* Loft Board Order No. 495; *see also, Ancona v Metcalf, supra.)*

It is clear that only buildings which have obtained a final certificate of occupancy under Multiple Dwelling Law § 301 can be deemed compliant with the health and safety requirements for multiple dwellings and be exempted from the Loft Law on this basis. *(See, 300 Bowery v Bass & Bass,* 122 Misc 2d 985, 988.) *Azizfard Trading Co. v Smilovici* (124 Misc 2d 1091 [App Term, 1st Dept]), relied upon by both the Loft Board and IAS court, does not, in principle, appear to be to the contrary. The Loft Board's decision herein expressly notes that in *Azizfard* "the work necessary to obtain a certificate of occupancy *pursuant to MDL § 301* was completed before the enactment of the Loft Law." (Emphasis added.)

Since, based on the evidence at the hearing, the Loft Board found that petitioners established all of the requisite criteria for entitlement to interim multiple dwelling status and to coverage under the Loft Law (Multiple Dwelling Law § 281), the petition should be granted, and the premises adjudged to be covered by the protections of the Loft Law.

Accordingly, the judgment, Supreme Court, New York County (Eve Preminger, J.), entered September 15, 1988, which denied and dismissed petitioners' article 78 petition challenging a determination of the New York City Loft Board which had denied their application for coverage under article 7-C of the Multiple Dwelling Law, should be reversed, on the

law, and the petition granted, and it should be adjudged that the premises 102 West 14th Street is an interim multiple dwelling subject to the coverage of article 7-C of the Multiple Dwelling Law, without costs.

SULLIVAN, J. P., ASCH and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on September 15, 1988, unanimously reversed, on the law, without costs and without disbursements, and the petition granted, and it is adjudged that the premises 102 West 14th Street is an interim multiple dwelling subject to the coverage of article 7-C of the Multiple Dwelling Law.