OPINION OF THE COURT
Edward H. Lehner, J.
Is a tenant who does not purchase under a “non-eviction” co-operative conversion plan protected in his right of continued occupancy under the New York City Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) as against the purchaser of his unit? “No” is the startling answer asserted by such a purchaser who claims a right to evict under section 54 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (the Code), adopted pursuant to such law. As will be seen below, such answer is based on a naked literal reading of said section without taking into consideration the framework of the co-operative conversion law. If adopted, it would render the body of law regulating “eviction” co-oping close to meaningless and defeat the intent of such law.
*709 FACTS
Plaintiff occupies apartment 11G at 220 East 57th Street as a rent-stabilized tenant. Her last lease expired July 31, 1981. Defendant Rowe had purchased the shares allocable to her apartment as well as three other apartments in the building in June, 1979. In April, 1981 he notified plaintiff that her lease would not be renewed stating that he sought possession of the apartment under subdivision (b) of section 54 of the Code in order to permit his 82-year-old mother to reside there.
THE PLEADINGS
In June, 1981 plaintiff commenced this action against Rowe and the sponsors of the conversion plan (the sponsors). In the first cause of action she seeks a mandatory injunction directing Rowe to offer her a renewal lease and to prevent him from attempting to evict her. She also asks the court to declare that as a rent-stabilized tenant she is entitled to a renewal lease and may not be evicted as long as she pays rent and is not in default of other provisions of her lease. In the second cause of action she seeks damages against Rowe including counsel fees. The third cause of action is asserted against the sponsors for fraudulent misrepresentation in that the offering plan stated that tenants could not be evicted for failure to purchase. In the fourth cause of action plaintiff seeks a declaration that the purchase by Rowe is void and that she may now purchase the shares allocable to her apartment.
In their answer the sponsors cross-claim against Rowe alleging that he is bound by the conditions of the offering plan, may not evict plaintiff and is required under the Code to offer her a lease renewal.
In his answer Rowe seeks a judgment declaring that he properly refused to renew plaintiff’s lease.
THE MOTIONS BEFORE THE COURT
Before the court is sponsors’ motion for summary judgment dismissing the complaint as to them and for summary judgment against Rowe on the cross claims. Plaintiff has cross-moved for summary judgment against all defendants.
*710 THE PRELIMINARY INJUNCTION
On August 19,1981, a preliminary injunction was issued by Justice Kirschenbaum prohibiting Rowe from commencing any proceeding to terminate plaintiff’s tenancy during the pendency of this action, the court finding that despite the conflicting interpretations of the Code advanced by the parties, “Rowe purchased the apartments with knowledge that he could not obtain possession”.
PERTINENT REGULATION
Subdivisions (a) and (b) of section 54 of the Code read as follows:
“The owner shall not be required to offer a renewal lease to a tenant only upon one of the following grounds:
“(a) Occupancy by proprietary lessee. The dwelling unit is located in a structure or premises owned by a cooperative corporation or association which is allocated to an individual proprietary lessee or is a unit in a property under the provisions of the Condominium Act, and the owner who does not reside in the building seeks in good faith to recover possession.
“(b) Occupancy by owner or immediate family. The owner seeks in good faith to recover possession of a dwelling unit for his own personal use and occupancy or for the use and occupancy of his immediate family; the term ‘immediate family’ includes a husband, wife, son, daughter, stepson, stepdaughter, father, mother, father-in-law or mother-in-law”.
DISCUSSION
In his letter to plaintiff indicating that her lease would not be renewed, Rowe stated that he was relying on subdivision (b) in that he needed the apartment for his mother. In his brief, he apparently relies on subdivision (a) claiming that as the purchaser of plaintiff’s apartment, he is entitled to possession.
The offering plan of the sponsors and the contract between the sponsors and Rowe state that the apartments are being sold under a “non-eviction” plan and that the tenants in possession are entitled to remain in occupancy under the Code and be offered renewal leases. Rowe claims, however, *711 that all rights under the Code are subject to his right to evict under section 54.
From the submitted papers it would appear that Rowe is a real estate speculator and that he is not in fact seeking to recover occupancy for his own use or that of his mother. But, in light of the conclusion set forth below, such factual finding is unnecessary for the determination of the motions before the court.
Between June 15, 1974 and July 1, 1977, the so-called Goodman-Dearie Law (L 1974, ch 1021) prohibited all conversions to co-operative status unless the plan provided that at least 35% of the tenants in occupancy consented to purchase. Prior to its enactment and at all times subsequent to its expiration, conversions in buildings subject to rent stabilization have been governed by section 61 of the Code, which also had a requirement that the plan could not become effective unless 35% of the tenants then in occupancy agreed to purchase. The section contains details as to how the percentage is calculated, grants rights of first refusal, states when eviction may occur and, in general, sets forth what must be contained in a plan in order to allow an owner to refuse to renew a lease. Somewhat similar (but in many respects different) regulations governing units subject to the older rent control law (Administrative Code, § YY51-1.0 et seq.) are set forth in subdivision c of section 55 of the Rent and Eviction Regulations of the City of New York thereunder. (For a detailed discussion of the differences between the two laws, see Lehner & Sweet, Goodman-Dearie Expiration Leaves Coop Conversion Radically Altered, NYLJ, Nov. 16, 1977, p 25, col 1.)
Both before and after Goodman-Dearie, many landlords offered plans which did not call for the necessary 35%. These plans were, up to a few years ago, often referred to as “outside the law”. This did not infer that they were unlawful, but only, that the landlords were not seeking to effect compliance with the statute, with the result that they could not evict tenants in possession under rent control or decline renewal leases to rent-stabilized tenants. (See de Minicis v 148 East 83rd St., 15 NY2d 432; Richards v Kaskel, 32 NY2d 524; Matter of Ortega v Lefkowitz, 66 Misc 2d 438, affd 38 AD2d 792.)
*712 The term “non-eviction plan” first appeared in our statutes in 1978 with the adoption of section 352-eee of the General Business Law which regulates conversions in three suburban counties. The term does not appear in the law respecting conversions in New York City although the Attorney-General has adopted guidelines regulating such plans.
In 1979 the Legislature adopted section 352-eeee of the General Business Law to provide protection against eviction under “eviction plans” to certain senior citizens and in 1980 added such protection to certain handicapped persons. In 1980 and 1981 there was much public attention focused on the unsuccessful efforts in the Legislature to increase the percentage needed for an eviction plan to a majority.
With a backdrop of this entire regulatory scheme providing various protections and rights to tenants on conversions, Mr. Rowe comes along and argues that notwithstanding the fact that the sponsors did not seek to comply with the provisions that would permit the eviction of nonpurchasing tenants, all he has to show in order to evict a tenant is that he seeks possession (Code, § 54, subd [a]) or seeks possession for himself or a member of his immediate family (§ 54, subd [b]). Lost to such tenant under Rowe’s contentions would be the right, which was undoubtedly relied upon by the tenant when deciding not to purchase, to remain in possession as a stabilized tenant. Moreover, under Rowe’s position, the nonpurchasing senior or handicapped person would not have the right granted by the afore-mentioned provisions to tenants subject to eviction plans to remain in possession subject to the rent laws. If Rowe’s position was correct, there would be no need for landlords to go through the hassle of obtaining the requisite percent of consents for eviction plans. All they would need do is sell off apartments and allow the purchaser to evict. To state the result clearly shows that section 54 could not have been intended to grant such right to purchasers under noneviction plans.
In Matter of Colao (NYLJ, Jan. 12, 1979, p 6, col 3), the court was faced with a similar problem of interpreting apparently conflicting regulations under the rent control *713 law. There, a purchaser of an apartment occupied by a rent-controlled tenant sought eviction of the tenant under the general language of subdivision a of section 55 of the Rent and Eviction Regulations of the City of New York claiming he needed the apartment for his own personal use. The landlord, similar to the sponsors herein, had not obtained the requisite consents for an eviction plan required by subdivision c of section 55. In dismissing the complaint, the court said (p 6, col 4): “At first blush, Regs. 55a and 55c appear to be in conflict. However, it is readily discernible that 55a is the broader statute covering all housing types except where limited elsewhere. Section 55c is specific and focuses its attention on co-operative corporations and associations. Thus, in actions of this type involving co-operative corporations and associations the proper vehicle for remedy is Reg. 55c”.
In Dodge v 27th St. Apts. Corp. (New York County, Index No. 18430/81), Justice Helm an recently made a similar observation with respect to the inability of a purchaser under a noneviction plan to evict nonpurchasing tenants under the general language of section 54 of the Code.
In Matter of Tombini v Berman (31 AD2d 467, affd 25 NY2d 936), the court upheld the rent administrator’s finding that in order for an owner of a co-operative unit to obtain the eviction of the rent-controlled tenant occupying such unit there must be compliance by the landlord with the specific section of the regulations governing co-operatives and that such owner could not rely on the general provisions of another section which allowed eviction certificates to be issued in the discretion of the administrator. (See, also, Oste v New York City Rent & Rehabilitation Admin., 51 Misc 2d 971; Matter of De Bilio, NYLJ, June 7, 1966, p 16, col 6, affd 27 AD2d 905; for an article on this issue see Saxe, Are “No-Buy” Tenants Safe in Co-op Conversion Plan?, NYLJ, Aug. 19, 1981, p 1, col 2.)
Subsequent to the submission of these motions, the Conciliation and Appeals Board, the body charged with administering rent stabilization, ruled in a proceeding between plaintiff and Rowe (Opn No. 18133) that plaintiff was entitled to have a renewal lease issued to her stating as follows: “Section 54 and 61 of the Code both derive from *714 Section YY51-6.0 (c) (9) of the Rent Stabilization Law and must be read together. A proprietary lessee’s right to evict a tenant for his own use and occupancy only obtains when the cooperative conversion has been done pursuant to an ‘Eviction Plan’, that is, a conversion plan which strictly adheres to Section 61 of the Code. To rule otherwise and permit all of a building’s stabilized tenants to be evicted after conversion pursuant to a Non-Eviction Plan immediately upon the sale of each apartment to a proprietary lessee, as suggested by the proprietary lessee of the subject apartment, would subvert the Rent Stabilization Law and render it meaningless”. A similar decision had previously been rendered by that body in Howell v Hochberg (Opn No. 17527).
Although technically review of the administrative determination is not before the court, the decision herein will render such review moot. Furthermore, the opinion of that board on the interpretation required herein is significant as courts should give weight to the construction given regulations by the agency responsible for their administration. (Matter of Albano v Kirby, 36 NY2d 526.)
The only authority cited by Rowe in support of his position is dicta in Hecht v Stagg (NYLJ, Dec. 4,1980, p 10, col 3). From that opinion, one cannot determine whether an eviction or noneviction plan is involved. However, to the extent that such dicta is contrary to the determination herein, this court declines to follow same.
CONCLUSION
The court finds that neither subdivision (a) nor (b) of section 54 of the Code is applicable when the landlord has not obtained the requisite consents for an eviction plan prescribed in section 61. Hence, plaintiff is entitled to summary judgment against Rowe declaring that as a rent-stabilized tenant, she is required to be offered a renewal lease as prescribed by the Code, and that Rowe is not entitled to institute proceedings to evict her under section 54 of the Code. There being now no need for the injunctive relief requested, the preliminary injunction issued by Justice Kirschenbaum is dissolved.
*715 On the second cause of action, the court in searching the record finds no basis for the recovery of attorney’s fees. The implied covenant of section 234 of the Real Property Law is not applicable to the situation at bar. Hence, said cause of action is dismissed as against all defendants.
The motion of the sponsors to dismiss the complaint as to them is granted. The claimed misrepresentation was that plaintiff was entitled to remain in possession as a rent stabilization tenant. As a result of the court’s determination, that representation was accurate. In fact, plaintiff only sought recovery against the sponsors in the event Rowe was found entitled to evict her. The sponsors’ cross claims against Rowe seeking a declaration that he is not entitled to evict plaintiff are dismissed as moot in light of the court’s determination on plaintiff’s claim.