■ JAMIE A. LESSER, Appellant, v PARK 65 REALTY CORP. et al., Respondents.

Plaintiff commenced this declaratory judgment action to establish both his right to continued occupancy of the apartment he had shared with his grandmother for more than two years prior to her death and his right to purchase the stock allocated to the apartment pursuant to a cooperative conversion plan.

Plaintiff's grandmother, Ethel Lesser, resided at apartment 16B at 65 Central Park West from May 1968 until her death on December 2, 1985, as a rent-stabilized tenant pursuant to a series of renewal leases, the last of which was to expire on September 30, 1986. In November 1983, the plaintiff Jamie Lesser, Ethel's grandson, moved in to reside with her and from that date on he openly and conspicuously lived in the apartment with her and continued to do so after her death on December 2, 1985. On November 21, 1986, after expiration of the last renewal lease, but while plaintiff was occupying the apartment, an offering plan for conversion to cooperative ownership was accepted for filing by the Attorney-General. When plaintiff tendered a subscription agreement under the plan, it was rejected by defendants by way of a letter advising that the only tenant of record for the apartment was Ethel Lesser, who had died prior to the filing of the offering plan, and that her heirs or distributees did not acquire any right to purchase the apartment.

A new Rent Stabilization Code (Code) became effective on May 1, 1987 and the instant declaratory judgment action was commenced on June 9, 1987, predicated upon provisions of that Code which apply to certain "family members" (including a grandson) and provide that "if the tenant is deceased at the expiration of the lease term, such tenant's family member * * * who has been residing with such tenant in the housing accommodation as a primary resident for a period of no less than two years immediately prior to the death of the tenant * * * shall be entitled to a renewal lease." (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [2]; § 2520.6 [o].) In their answer and counterclaim defendants alleged, *inter alia,* that plaintiff moved into and took occupancy of the apartment after Ethel

Lesser's death and that he did not occupy the apartment as a primary resident for the two years prior to her death, and in addition to seeking the dismissal of plaintiff's complaint, judgment was sought declaring that plaintiff is not a primary resident of the apartment nor a tenant in occupancy and is not entitled to a renewal lease or to purchase the stock as an insider pursuant to the offering plan.

On the motion and cross motion before the IAS court, the parties strenuously litigated two issues—(1) whether the provisions of the new Code were to be applied retroactively and (2) whether plaintiff grandson had lived in the apartment as a primary resident for the requisite two-year period.[1] The IAS court did not address the factual primary residence issue because it concluded that the relevant provisions of the new Rent Stabilization Code were not to be applied retroactively, and, that in the absence of such statutory authority, the ruling in *Sullivan v Brevard Assocs.* (66 NY2d 489), limiting the right to a renewal lease to the tenant named in the original lease, was controlling. Accordingly, the complaint was dismissed and a declaration in favor of defendants was entered.

We hold, to the contrary, that the remedial provisions of the new Rent Stabilization Code should apply retroactively. Since we find that the proof in the record sufficiently establishes that plaintiff occupied the subject apartment as his primary residence during the requisite period, we further hold that he is entitled to the protection of the relevant provisions of the 1987 Code. Accordingly, we reverse and grant judgment declaring in favor of the plaintiff.

The family succession provisions of the new Rent Stabilization Code were enacted in response to the harsh consequences resulting from displacement from one's home upon the death or departure of a named tenant with whom a family member, not named in the lease, resided. The need for these provisions was especially critical in light of legal developments in recent years in this particular area which have rendered many such family residents vulnerable to eviction, and the new Code provisions in issue were intended to "prevent wholesale evictions" of these persons and create order out of the uncertainties prevailing in the law.

---

1. Since the parties, both before the IAS court and this court, limited their arguments and briefs to the question of the Code's retroactivity, it is unnecessary to reach the issue before the Appellate Term in *East Four-Forty Assocs. v Ewell* (138 Misc 2d 235, *lv granted* NYLJ, Mar. 28, 1988, at 14, col 2; *see however, Two Assocs. v Brown,* 127 AD2d 173).

When rent stabilization was adopted in 1969 as a consequence of the acute housing emergency which then existed, and continues to exist, one of the significant protections afforded thereby was the right of tenants to a renewal lease. *(See,* Administrative Code of City of New York former § YY51-6.0 [c] [4].) However, neither the original Rent Stabilization Law nor the Code adopted thereunder provided a definition for the term "tenant" in the context of entitlement to a renewal lease, and in the ensuing years both the authorized administrative bodies and various courts dealt with the issue of family rights to a renewal lease on a case-by-case basis. The issue, however, was never definitively resolved until the decision by the Court of Appeals in *Sullivan v Brevard Assocs.* (66 NY2d 489, 491, *supra),* which held that in the absence of a different definition of the term "tenant" in the law governing rent-stabilized apartments, only the named tenant, as defined in the lease, is entitled to a renewal lease, and the landlord "is not obligated to offer a renewal lease to a relative of the tenant who occupies the apartment with the tenant during a portion of the lease term".

At the time of the Court of Appeals decision in *Sullivan v Brevard Assocs. (supra),* the New York State Division of Housing and Community Renewal (DHCR)[2] was in the process of preparing a new Rent Stabilization Code containing provisions to protect family members from eviction in the event of the named tenant's departure. However, the adoption of that new Code was not imminent because various of the legislatively imposed procedural requirements had not been completed and would require an extended time frame. Concerned that the decision in *Sullivan* might, in the interim, be used as the predicate for large numbers of evictions, the Commissioner of DHCR issued an Emergency Operational Bulletin (No. 85-1) on December 10, 1985 to provide interim, emergency protection to tenants' family members. That Emergency Operational Bulletin was found invalid by this court in a decision released April 9, 1987, on the ground that the Commissioner could not, under the governing law, enact such broad provisions by means of a unilateral "Emergency Bulletin". *(Two Assocs. v Brown,* 127 AD2d 173.) Shortly after the Emergency Bulletin was invalidated, properly promulgated amendments to a new Rent Stabilization Code, including the salutary provisions here at issue, were enacted, effective May 1, 1987.

2. The agency now responsible for administering the Rent Stabilization Law *(see,* L 1983, ch 403; L 1985, ch 888).

As the foregoing history clearly indicates, the provisions of Rent Stabilization Code § 2523.5 (b) requiring a landlord to offer a renewal lease to members of a departed tenant's family under certain specified conditions are remedial in nature. These provisions were included in the new Code to prevent the grievous harm that would ensue from the wholesale eviction of family members which would otherwise be permitted under the law set forth in the *Sullivan* decision *(supra)* and to address the inadequacies in this area of the law in light of its history.

Remedial statutes should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible, and therefore should be accorded retroactive effect. *(E.g., Matter of McMurray v New York State Div. of Hous. & Community Renewal,* 135 AD2d 235; McKinney's Cons Laws of NY, Book 1, Statutes §§ 54, 321.) The very dispatch with which DHCR proceeded to promulgate protective measures for the family members of tenants, first by way of the Emergency Bulletin, albeit such was found procedurally deficient, and then through the prescribed procedural course, indicates a clear intent to retroactively safeguard family members still in possession. *(See, Tegreh Realty Corp. v Joyce,* 88 AD2d 820.) We have frequently noted that statutes affording protections to tenants are to be liberally construed as implementing the purposes for which the rent laws were enacted. *(Matter of McMurray v New York State Div. of Hous. & Community Renewal, supra,* at 239, citing *Matter of Sommer v New York City Conciliation & Appeals Bd.,* 93 AD2d 481, *affd* 61 NY2d 973.) In this regard, courts have regularly given retroactive effect to remedial housing legislation. *(E.g., Post v 120 E. End Ave. Corp.,* 62 NY2d 19; *Matter of McMurray v New York State Div. of Hous. & Community Renewal, supra; Megalopolis Prop. Assn. v Buvron,* 110 AD2d 232; *Tegreh Realty Corp. v Joyce, supra; Gordon & Gordon v Madavin, Ltd.,* 108 Misc 2d 349 [App Term, 1st Dept].) Since the family succession provisions here at issue (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [2]; § 2520.6 [o]) similarly fall within the ambit of remedial protection, they too should apply retroactively.

Having determined that the Code provisions are retroactive, we now examine their applicability to plaintiff Jamie Lesser. In order to qualify for a renewal lease, the Code requires a family member of a deceased tenant to have resided with such tenant in the apartment as a primary resident for a period of no less than two years immediately prior to the death of the named tenant. (Rent Stabilization Code § 2523.5 [b] [2].) In the

instant case, the named tenant, Ethel Lesser, died of natural causes on December 2, 1985. On the motion before the IAS court, the plaintiff, her grandson Jamie Lesser, submitted unrefuted documentary evidence establishing his joint occupancy of the apartment with his grandmother since at least November 1983. He set forth the traditional indicia of primary residence at this address—i.e., driver's license, voter's registration, income tax returns, telephone records, bank statements, mail addressed to him at the address, moving receipts, and canceled checks to the building's employees. Affidavits from friends and relatives of both plaintiff and the deceased were also submitted, which testify with factual specificity and detail as to plaintiff's joint occupancy of the apartment with his grandmother from November 1983 onward. This evidence clearly indicates that plaintiff moved in with his grandmother to share the residence as part of a nurturing and stimulating family relationship. Plaintiff established his residence in a bona fide fashion, at a time when his grandmother was in good health, and not in furtherance of some nefarious scheme to succeed to the apartment. He lived with his grandmother as a family unit for at least the requisite period of time specified by the Code and, therefore, comes within its protective aegis.

Accordingly, plaintiff is entitled to a renewal lease effective October 1, 1986 and by reason thereof must be deemed the "tenant in occupancy" on the date that the offering plan was accepted for filing, who is entitled to participate in the co-op conversion and purchase of the shares allocated to the apartment. Concur—Kupferman, J. P., Ross, Carro, Ellerin and Smith, JJ.