LAURIE K. FESTA et al., Respondents, v GARY LESHEN, Respondent, and JOEL LESHEN et al., Appellants. NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Intervenor-Appellant.

First Department, January 17, 1989

## APPEARANCES OF COUNSEL

*Jeffrey R. Metz* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for respondents.

*Hal Brodie* of counsel *(Hartman, Ule, Rose & Ratner,* attorneys), for Joel Leshen, appellant.

*Harvey M. Berman* of counsel *(Lawrence S. Kahn* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for intervenor-appellant.

## OPINION OF THE COURT

SULLIVAN, J.

At issue on this appeal from an award of possession to the landlord is a determination by Appellate Term holding invalid recent amendments to the Rent Stabilization Code (Code) which provide that relatives who reside with a named tenant may succeed to the tenant's lease rights upon the tenant's death or abandonment of the dwelling (9 NYCRR 2523.5 [b] [1], [2]).

In November 1977, Gary Leshen signed a lease entitling him to reside in petitioners' rent-stabilized apartment. While Gary was the sole tenant of record, his brother, Joel, as specifically found by the Civil Court, moved into the apartment at the same time. The brothers allegedly lived together until February 1982, when Gary vacated the premises, although he continued to pay the rent and sign the renewal leases. He purportedly planned to return to the apartment. In September 1983, Joel's girlfriend, now wife, moved into the apartment. Joel began to pay rent in January 1985 with checks imprinted "Gary Leshen and Joel Leshen" but signed by Joel and drawn on a joint account.

In January 1986, petitioners brought this holdover proceeding against both brothers. As an affirmative defense, Joel asserted that petitioners had conferred tenant status upon him by accepting his rent checks, and, that under a New York

State Division of Housing and Community Renewal (DHCR)[1] Emergency Operational Bulletin then in effect, he was entitled, as a member of Gary's "non-immediate family" who had continuously resided in the apartment as a primary resident since the commencement of Gary's tenancy, to a renewal lease in his own name. The Civil Court dismissed the petition against Joel and awarded him possession, finding that, while the DHCR Operational Bulletin had been issued ultra vires, petitioners waived any objection to his tenancy by accepting his checks (132 Misc 2d 805).

Subsequently, DHCR adopted amendments to the Code which, *inter alia,* provide that certain relatives, including brothers, who have resided in a rent-stabilized apartment from the inception of the tenancy, are entitled to a renewal lease when the named tenant vacates the premises (9 NYCRR 2523.5 [b] [1]). On appeal to Appellate Term, petitioners argued that these succession provisions were invalid since they do not fall within the Legislature's delegation of authority to DHCR. In addition, petitioners urged that they had not waived their right to object to Joel's tenancy.

Appellate Term awarded possession to petitioners, finding that their acceptance of Joel's checks did not operate as a waiver (138 Misc 2d 399). In addition, the court found that Joel was precluded from succeeding to the apartment as a member of Gary's family on the basis of its decision in *East Four-Forty Assocs. v Ewell* (138 Misc 2d 235), in which a divided court had held the succession provisions of the Code to be invalid as inconsistent with the Rent Stabilization Law, as well as ultra vires.[2] Since we find that the succession provisions of the Rent Stabilization Code are the product of a proper exercise of DHCR's statutory authority to promulgate amendments to the Code, we reverse and reinstate the Civil Court's judgment.

In order to place the issue in proper perspective, a brief examination of the statutory and regulatory background of the challenged Code succession provisions is in order. In 1946, the Legislature enacted the Emergency Housing Rent Control Law (EHRCL), declaring that a serious public emergency in housing existed as a result of World War II and that certain

1. Since 1983, DHCR has been delegated the responsibility of administering the various rent regulation programs in the City and State of New York.

2. The tenant's appeal to this court in *Ewell* was withdrawn, apparently after the parties settled their dispute.

rental practices, such as the imposition of oppressive rents and unjust rental terms, required regulation. (L 1946, ch 274, § 1.) The statute established a Temporary State Housing Rent Commission with the authority to adopt rules to prevent these unfair rental practices.

Section 56 (4) of the regulations which were thereafter promulgated (New York State Rent and Eviction Regulations) prohibited the eviction of an occupant of a rent-controlled housing accommodation who was either the surviving spouse of the deceased tenant or some other member of the deceased tenant's family and who had been living with the tenant. *(See, Matter of Waitzman v McGoldrick,* 20 Misc 2d 1085.) This provision is presently found under 9 NYCRR subtit S, ch VII, subch B (DHCR's State Rent and Eviction Regulations). *(See,* 9 NYCRR 2104.6 [d].)

In 1962, the Legislature, finding that a serious State-wide public emergency continued to exist, enacted the Local Emergency Housing Rent Control Act (L 1962, ch 21), which, *inter alia,* authorized the New York City Council to adopt local rent control laws in place of the EHRCL and to establish a city housing rent agency to administer these laws and promulgate regulations necessary for their implementation. Accordingly, that same year, the City Council enacted the New York City Rent and Rehabilitation Law, otherwise known as the New York City Rent Control Law (Administrative Code of City of New York, ch 51, tit Y), which covered housing accommodations completed before February 1947, and set specific limits on the rents that could be charged. Pursuant to its enabling statute, title Y vested in a city rent agency, later to become the Housing and Development Administration (HDA), authority to administer the law. The agency promulgated regulations which included a tenant succession provision identical to that found under the earlier State Rent and Eviction Regulations. *(See,* New York City Rent and Eviction Regulations § 56 [d], presently 9 NYCRR subtit S, ch VII, subch D, 2204.6 [d] [DHCR's New York City Rent and Eviction Regulations].)

In 1969, the City Council added title YY to chapter 51 of the Administrative Code to provide rent control for housing accommodations that had become available between February 1947 and March 1969. The principal difference between title YY, known as the Rent Stabilization Law of 1969, and the 1962 Rent Control Law is that while the 1962 statute was administered by a city agency, the Rent Stabilization Law was to be predominantly administered by an association of dwell-

ing owners. *(See, 8200 Realty Corp. v Lindsay,* 27 NY2d 124, 129-130.)* Membership in the Real Estate Industry Stabilization Association, as the Association came to be known, was voluntary, but if an owner did not join, the dwelling became subject to rent control under title Y. The Rent Stabilization Law provided for a somewhat greater permissible return on investment than the Rent Control Law of 1962. *(See, supra,* at 130.)

Under the Rent Stabilization Law, the Association was required to adopt a code "designed to provide safeguards against unreasonably high rent increases and, in general, to protect tenants and the public interest". (Administrative Code § YY51-6.0 [c].) Accordingly, the Association adopted a Rent Stabilization Code which, unlike the rent control regulations previously promulgated by the city and State agencies, did not contain a succession provision expressly prohibiting the eviction of an occupant of a rent-stabilized apartment who was either the surviving spouse of the deceased tenant or some other member of the deceased tenant's family.

The absence of such a provision, however, did not leave a surviving family member without a remedy. Under the Rent Stabilization Law, the Association was required to establish a Conciliation and Appeals Board (CAB) "to receive and act upon complaints from tenants" (Administrative Code § YY51-6.0 [b] [3]). Pursuant to part III of the Code, the CAB was established. Using the family relationships listed under section 54 (b) of the Code in its definition of "immediate family"[3] as a guide, the CAB, in ruling on the complaints of surviving family members who feared eviction, considered whether the owner had expressly or impliedly consented to the family member's occupancy. If he or she had consented, the CAB would prohibit eviction of the family member. The Board's orders concerning these family succession rights were upheld by the courts. *(See, e.g., Matter of Concord Props. [Conciliation & Appeals Bd.],* NYLJ, Feb. 2, 1983, at 11, col 1; *Matter of 310 Assocs. [Hemmerdinger],* NYLJ, Dec. 24, 1981, at 6, col 6.)

In 1983, the Legislature, by the Omnibus Housing Act (L 1983, ch 403), transferred responsibility for administering the New York City Rent Stabilization and Rent Control Laws to

---

**3.** Section 54 (b) permitted recovery of a dwelling unit for the personal use of an owner or his or her immediate family, which was defined to include a "husband, wife, son, daughter, stepson, stepdaughter, father, mother, father-in-law or mother-in-law".

DHCR, which assumed the regulatory functions of the CAB. In receiving tenant complaints from family members threatened with eviction upon the death or departure of the named tenant, DHCR continued the case-by-case policy which the CAB had followed.

In November 1985, however, the Court of Appeals ruled that neither the Rent Stabilization Law nor the Rent Stabilization Code, as they then existed, could be construed to extend succession rights implicitly to family members. *(See, Sullivan v Brevard Assocs.,* 66 NY2d 489.) As a result of *Sullivan,* many family members, including spouses and children, were in jeopardy of eviction when the named tenant died or vacated the premises.

Three months before this ruling, the Legislature had, effective August 2, 1985, delegated to DHCR the authority to promulgate amendments to the Rent Stabilization Code. (L 1985, ch 888, § 2, *amdg* Administrative Code § YY51-6.0 [b].) DHCR had begun the process of drafting an amended Code which, *inter alia,* would protect families from eviction upon the death or departure of the named tenant. At the time of the *Sullivan* decision, however, the process had not yet been completed. Under chapter 888, any such amendment of the Code would not become final until it had been submitted for comment to the Commissioner of the New York City Department of Housing Preservation and Development (HPD) and a public hearing held. In view of the urgency created by *Sullivan,* DHCR issued an Emergency Operational Bulletin which, *inter alia,* extended the right of renewal to family members who, for a specified time, had primarily resided in a rent-stabilized apartment with the named tenant prior to that tenant's death or departure. In *Two Assocs. v Brown* (127 AD2d 173), however, this court, noting that the procedural requisites of chapter 888 had not been met, held that DHCR lacked the authority to issue such a bulletin.

The process of amending the Code was completed in May 1987, one month after this court's decision in *Two Assocs. (supra)* As amended, the Code provides for succession under two circumstances, either where a family member[4] of a named tenant has resided in the housing accommodation as a primary resident

---

4. Pursuant to 9 NYCRR 2520.6 (o) a family member is defined as "[a] husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the tenant or permanent tenant."

from the inception of the tenancy or commencement of the relationship, and the named tenant vacates the premises (9 NYCRR 2523.5 [b] [1]), or where a family member has resided with such tenant in the housing accommodation as a primary resident for a period of no less than two years immediately prior to the death of the tenant (9 NYCRR 2523.5 [b] [2]).

In determining the instant challenge to the validity of these succession provisions, we are guided by the standard of judicial review as set forth in *Ostrer v Schenck* (41 NY2d 782, 786): "The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation 'is so lacking in reason for its promulgation that it is essentially arbitrary' ". *(See also, Matter of Association of Commercial Prop. Owners v New York City Loft Bd.,* 118 AD2d 312, 314-315; *Stein v Rent Guidelines Bd.,* 127 AD2d 189, 194-195; Local Emergency Housing Rent Control Act § 8; L 1962, ch 21, § 1 [McKinney's Uncons Laws of NY § 8608] ["No regulation or order of the city housing rent agency shall be enjoined or set aside, in whole or in part, unless the petitioner shall establish to the satisfaction of the court that the regulation or order is not in accordance with law, or is arbitrary or capricious"].)

Of course, as this court has recognized, an administrative agency may not, in the exercise of its rule-making authority, promulgate a regulation out of harmony with the plain meaning of the statutory language. *(See, Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,* 104 AD2d 223, 225, affd 66 NY2d 298; *see also, Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471, 480-481; *Matter of Jones v Berman,* 37 NY2d 42, 53; *Matter of Goldsmith v Gabel,* 42 Misc 2d 732, 734, affd 21 AD2d 782.) Similarly, an agency may not, in excess of its lawfully delegated authority, promulgate rules and regulations for application to situations not within the intendment of the statute. *(See, Boreali v Axelrod,* 71 NY2d 1; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 595; *Matter of Bates v Toia,* 45 NY2d 460, 464 [1978]; *Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., supra,* 104 AD2d, at 225.)

On the other hand, remedial statutes and regulations designed to promote the public good should be liberally construed. *(See, Matter of Sommer v New York City Conciliation & Appeals Bd.,* 93 AD2d 481, 486, affd 61 NY2d 973; *see also,* McKinney's Cons Laws of NY, Book 1, Statutes § 341.) Indeed,

in *Lesser v Park 65 Realty Corp.* (140 AD2d 169, 173), this court specifically stated that the challenged succession provisions are "remedial in nature" and "should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible". Clearly, DHCR acted rationally and within the scope of its lawfully delegated authority in promulgating the Code amendments to alleviate the continuing and critical shortage of housing in New York City.

As already noted, the City Council designed a system under which a private association was to adopt a Rent Stabilization Code. The Council also provided that any such Code require that the association's members offer tenants the option of renewing their lease (Administrative Code § YY51-6.0 [c] [4]). Like the EHRCL of 1946 and the New York City Rent Control Law of 1962, the statute did not expressly provide to those members of a tenant's immediate family who had been residing with the tenant their own right to renew the lease should the tenant die or vacate the premises, but, unlike the rent control regulations promulgated by the governmental agencies authorized to administer the 1946 and 1962 statutes, the private association did not adopt a succession provision under the Code requiring that such family members be offered the option of renewing a rent stabilized lease.

In 1985, however, the Legislature divested the Association of all its powers and authority (L 1985, ch 888), and, although chapter 888 provided that the Rent Stabilization Code was to continue in effect, the Legislature, at the same time, delegated to DHCR the authority to amend the Code *(see,* Administrative Code § 26-511 [b], formerly § YY51-6.0 [b]) and to adopt a Code which, "in general, protects tenants and the public interest" (Administrative Code § 26-511 [c] [1], formerly § YY51-6.0 [c] [1]). It was in the exercise of this authority that DHCR adopted the now challenged succession provisions of the Code.

The challenged regulations reflect DHCR's measured response to the *Sullivan* decision (66 NY2d 489, *supra),* which had the potential to expose spouses and children to summary eviction with little or no hope of finding affordable housing in New York City. Such a situation surely posed at least as serious a threat "to the public health, safety and general welfare" (Administrative Code § YY51-1.0) as the eviction of the named tenant with whom they resided. The succession provisions adopted by DHCR, designed to prevent just such a situation, thus effectively advance the purposes for which the

Rent Stabilization Law was enacted. Indeed, as this court recognized in *Lesser v Park 65 Realty Corp. (supra,* 140 AD2d, at 173), the succession provisions "were included in the new Code to prevent the grievous harm that would ensue from the wholesale eviction of family members which would otherwise be permitted under the law as set forth in the *Sullivan* decision *(supra)* and to address the inadequacies in this area of the law in light of its history."

In *East Four-Forty Assocs. v Ewell (supra,* 138 Misc 2d 235), Appellate Term, relying on *Sullivan (supra),* concluded from the omission in both the New York City Rent Stabilization Law and the Rent Stabilization Code of any provision specifically extending renewal rights to the family of a tenant who had died or vacated the premises or of any definition of the word "tenant" that "the Legislature deliberately foreclosed succession rights under the New York City Rent Stabilization Law in order to render that law, to that extent, less intrusive than the New York City Rent Control Law upon the interests of owners and developers." *(Supra,* 138 Misc 2d, at 240.) Accordingly, Appellate Term held that only the Legislature could provide succession rights to the family of a named tenant.

In our view, Appellate Term misread *Sullivan,* which merely dealt with whether rights similar to the family succession provisions under both the city and State rent control regulations (9 NYCRR 2104.6 [d]; 2204.6 [d]), could be implied from the New York City Rent Stabilization Law and Code. Noting that rent stabilization was intended to be "a less onerous form of regulation than rent control" *(supra,* 66 NY2d, at 494), the Court of Appeals refused to find, by implication, succession rights in the Rent Stabilization Law merely because they were provided under the Rent Control Law, and concluded that a regulatory scheme under which succession rights exist with respect to rent-controlled, but not rent-stabilized, apartments was not at all inconsistent. The court never intimated, however, that an amendment of the Code to provide family succession rights was statutorily barred.

Nor, in reaching its conclusion, did the Court of Appeals suggest that succession rights are either incompatible with the purpose of rent stabilization or necessarily a creature only of statutory amendment. Indeed, throughout its analysis, the court sought to determine whether succession rights could be found in either a regulation or statute governing rent and

eviction in New York City. Thus, the court noted, "the fact that such a provision has been omitted from the Rent Stabilization Law cannot be overlooked, especially since it has been included, where intended, in other regulations *(see,* Rent and Eviction Regulations of Division of Housing and Community Renewal, 9 NYCRR 2104.6 [d])." *(Supra,* 66 NY2d, at 493-494.) Similarly, with respect to the definition of "tenant", the court stated, "Although other statutes and regulations contain a definition of the term 'tenant' identical to that set forth in the New York City Rent Control Law * * * the City Rent Stabilization Law does not." *(Supra,* at 493.)[5]

In repeatedly contrasting the "Rent Stabilization Law" to "other statutes and regulations", the Court of Appeals was clearly referring to both the rent stabilization statute and the Code. Thus, in stating that "[n]either the rent-control definition of 'tenant' nor its provision limiting eviction of occupants upon the death of the tenant * * * is found in the Rent Stabilization Law, and we conclude that in both instances these omissions from the law were deliberate"[6] *(Sullivan v Brevard Assocs., supra,* at 493), the court was referring to omissions in the statute and in the Code.

In making this observation, the court assumed that a definition of "tenant" and/or a succession provision similar to those found under the rent control laws could be added to the Code without a statutory amendment. Indeed, in its decision, the court noted with approval that the regulations promulgated by DHCR under the Emergency Tenant Protection Act of 1974 (ETPA) contained a definition of the term "tenant" (9 NYCRR 2500.2 [h]) identical to that set forth in the New York City Rent Control Law. *(Supra,* 66 NY2d, at 493.) Like the Rent

---

**5.** The city Rent Control Law defines "tenant" as "tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation." (Administrative Code of City of New York § Y51-3.0 [m].) The discussion in *Sullivan* concerning the absence of a definition of tenant in the Rent Stabilization Law and Code arose only because of the court's assumption that where there is no regulation expressly granting succession rights to family members, such rights may nevertheless be implied from the presence of a broad definition of the term "tenant". Thus, if, as here, an express succession provision is present, it is irrelevant whether the term "tenant" has been otherwise defined.

**6.** The City Council's failure to define "tenant" in title YY was not a deliberate policy decision to limit the use of the term. Unlike the EHRCL of 1946 and title Y of 1962—both of which contain a section setting forth the definitions of numerous terms, including "tenant"—title YY does not include a definitional section. Thus, the statute fails to define any of the terms listed in the definitional section of the rent control laws.

Stabilization Law, the ETPA (L 1974, ch 576, § 4 [McKinney's Uncons Laws of NY § 8621 *et seq.]*), which establishes a rent stabilization system outside of New York City, does not define the term "tenant". Similarly, none of the rent control statutes contain a succession provision. Rather, all such succession provisions are found in regulations promulgated by the particular government agency responsible for the administration of the rent control laws.

Clearly, if DHCR may, without the benefit of a statutory definition, define "tenant" in its ETPA rent stabilization regulations and if, without an express statutory mandate to do so, succession provisions may be included in the State and city rent control regulations, DHCR may include either or both of these same provisions in the Code. The drafters of the rent control and ETPA regulations were not empowered with any greater authority to promulgate succession provisions than the drafters of the Rent Stabilization Code. Having been delegated the authority and responsibility for adopting amendments to the Code, DHCR properly sought to promulgate regulations which would provide for succession rights to the family of a tenant residing in a rent-stabilized apartment in New York City.

In *Two Assocs. v Brown (supra,* 127 AD2d, at 173), this court recognized that DHCR may adopt succession rights regulations, provided that the agency follows the procedural requirements which the Legislature has prescribed. There, we held that tenant succession rights to rent-stabilized apartments in New York City could not be granted "in the absence of a legislative amendment of the Law or without [DHCR] properly moving to amend the Code as specified in the Law." *(Supra,* at 183.)

In *Ewell (supra,* 138 Misc 2d 235) Appellate Term concluded that the word "or" in the above question should be read as conjunctive so that succession rights may be granted only if the Legislature amends the Rent Stabilization Law to expand the definition of "tenant" and the Code is amended under the statutorily prescribed procedure. *(Supra,* at 247.) The word "or" is "a disjunctive particle indicating an alternative and it often connects a series of words or propositions presenting a choice of either". *(Colbert v International Sec. Bur.,* 79 AD2d 448, 463, *lv denied* 53 NY2d 608; *see also, McSweeney v Bazinet,* 269 App Div 213, 216, *affd* 295 NY 797; McKinney's Cons Laws of NY, Book 1, Statutes § 235.) Moreover, Appellate Term's interpretation erroneously assumes that only the Leg-

islature or the City Council may expand the definition of the term "tenant", and that such an expanded definition is a prerequisite to the adoption of family succession provisions. As already demonstrated, however, *Sullivan* does not support either of these two assumptions. Moreover, as is obvious from the context of *Two Assocs. (supra)*, the word "or" was intended as disjunctive.

*Two Assocs. (supra)* concerned the validity of a DHCR Emergency Operational Bulletin containing succession provisions similar to those under challenge in this proceeding. DHCR argued that its authority to issue such a bulletin was supported by two statutory sources. It first pointed to the Omnibus Housing Act (L 1983, ch 403, § 3), under which the agency was given broad authority to administer the Rent Stabilization Law in a manner which best effectuates the purposes of the statute. In rejecting this argument, this court found that DHCR, in issuing the Emergency Operational Bulletin, had sought to create a new law and that the authority merely to administer the Rent Stabilization Law did not include "the authority to create new laws." *(Supra,* 127 AD2d, at 182.) As its other source of authority, DHCR relied on its power to adopt amendments to the Code (L 1985, ch 888). We rejected this argument solely on procedural grounds since DHCR had not submitted the proposed amendment to HPD for comment and had not held public hearings. There was no suggestion in *Two Assocs.* that DHCR does not have the authority to adopt such an amendment. Indeed, by limiting its discussion to the procedural flaws in issuing the bulletin, this court implicitly recognized DHCR's substantive authority to promulgate succession provisions in the Code.

Under the Omnibus Housing Act of 1983, DHCR assumed administration of the Rent Stabilization Law. Nevertheless, the Rent Stabilization Code promulgated by the Association was continued and the Association retained its authority to amend the Code, subject to HPD's approval. The Legislature added, however, that "[n]o provision of such code shall impair or diminish any right or remedy granted to any party by this law or any other provision of law" (L 1983, ch 403, § 9). In 1985, the authority to amend the Code was taken from the Association and given to DHCR, subject to the same limitation concerning the impairment or diminishment of rights and remedies. (L 1985, ch 888.) The Code which the Association had promulgated was continued "to the extent that it is not inconsistent with law." (L 1985, ch 888, § 8.)

Although, as previously discussed, the challenged amendments to the Code are entirely consistent with the Rent Stabilization Law, Appellate Term, in *Ewell,* found that the succession provisions "violate the above-quoted proscription in that they impair and diminish the existing rights of owners by requiring them to offer renewal leases to persons other than tenants of record where previously they were under no obligation to do so." *(Supra,* 138 Misc 2d, at 244.) The succession provisions, however, do not impair or diminish any right or remedy which a law has granted to landlords. That no statute or regulation had previously restricted the contractual rights of landlords to evict the family members of a tenant who had died or vacated rent-stabilized premises does not constitute the granting of a right. Rights are not conferred by the absence of a regulation.

Indeed, by delegating to DHCR the authority to adopt an amendment to the Code which "protects tenants and the public interest" (Administrative Code § 26-511 [c] [1], formerly § YY51-6.0 [c] [1]), the Legislature clearly provided the agency with a broad mandate, which would inevitably require some changes in the legal relationship between landlords and tenants. The statutory proscription against the impairment of existing rights was intended to assure that any such changes be not inconsistent with the Rent Stabilization Law or any other law. The challenged provisions satisfy this requirement.

Finally, we note that while none of the various rent control and rent stabilization laws enacted by the State Legislature or the New York City Council have expressly addressed the problem which arises when a family member who is the named tenant dies or vacates the premises where the family resides, the absence of such express statutory proscription does not bar appropriate administrative action. As the Court of Appeals noted in *Matter of Nicholas v Kahn* (47 NY2d 24, 31): "The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation * * *. Indeed, the difficulty and complexity of most of these policy determinations mandates that the legislative body be permitted to provide for the implementation of basic policy through the use of specialized agencies concentrating upon one particular problem at a time." *(See also, Matter of Consolidated Edison Co. v Department of Envtl.*

*Conservation,* 71 NY2d 186, 191; *Matter of Levine v Whalen,* 39 NY2d 510, 515.)

The basic policy underlying these statutes, i.e., the regulation of disruptive rent and eviction practices resulting from abnormal housing conditions, is essentially accomplished by requiring that landlords offer the option of lease renewal. All of the statutes have delegated to the agency which they create the authority to fashion rules and regulations in furtherance of this basic policy. The agencies have faced the problem of family succession rights by promulgating regulations which, as noted approvingly in *Sullivan (supra),* prohibit the eviction of a deceased tenant's family. *(See,* 9 NYCRR 2104.6 [d]; 2204.6 [d].) The succession provisions challenged in this proceeding are the most recent of these regulations (9 NYCRR 2523.5 [b] [1], [2]).

Nevertheless, in *Ewell,* Appellate Term, citing *Boreali v Axelrod* (71 NY2d 1, *supra),* found that the challenged regulations exceed DHCR's authority and thus "represent an unconstitutional intrusion into the exclusive domain of the Legislature by an administrative agency". *(Supra,* 138 Misc 2d, at 244.) *Boreali* does not, however, support such a conclusion. There, the Court of Appeals, on the basis of four "coalescing circumstances" *(supra,* 71 NY2d, at 11), which led it to conclude that "the difficult-to-define line between administrative rule-making and legislative policy-making has been transgressed" (at 11), invalidated a comprehensive Public Health Council (PHC) code regulating tobacco smoking in areas open to the public. Such a combination of circumstances is not present here.

The first of these circumstances entailed "a regulatory scheme laden with exceptions based solely upon economic and social concerns." *(Supra,* 71 NY2d, at 11-12.) The PHC had apparently carved out numerous exemptions to the prohibition against smoking in areas open to the public, including waivers based on financial hardship, which were based on social and economic compromise rather than on public health considerations. In contrast, the succession provisions of the Code are not encumbered with any such exceptions. While, as Appellate Term noted, the succession provisions cover family members only and, thus, do not include other relationships, this sole limitation is consistent with the State and city rent control regulations prohibiting the eviction of a deceased tenant's family. These regulations have long been in effect and have been judicially approved. *(See, Matter of Herzog v Joy,* 74

AD2d 372, *affd* 53 NY2d 821; *Sullivan v Brevard Assocs.,* *supra,* 66 NY2d, at 492-494.)

The second consideration in *Boreali,* that in promulgating that antismoking regulations, the PHC created "its own comprehensive set of rules without benefit of legislative guidance" *(supra,* 71 NY2d, at 13), is also inapplicable. The Code's succession regulations, limited to a particular problem, albeit one not specifically addressed by the Legislature or the City Council, are entirely consistent with the legislative intent underlying the Rent Stabilization Law.

In *Boreali,* the court also considered "the fact that the agency acted in an area in which the Legislature had repeatedly tried—and failed—to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions" *(supra,* 71 NY2d, at 13). The Legislature had hardly engaged in any kind of effort to reach an agreement on succession rights to rent-stabilized apartments. Indeed, as Justice Parness aptly noted in his dissent in *Ewell* *(supra,* 138 Misc 2d, at 254), it had been widely assumed, prior to *Sullivan (supra),* that such rights existed under the Rent Stabilization Law.

While the Legislature has considered a statutory response to *Sullivan (supra),* the Court of Appeals, in *Boreali (supra),* could not have intended to invalidate a regulation merely because the Legislature had, at some point, considered the same subject matter. The court had in mind the type of extensive and repeated consideration which the Legislature had afforded to the issue of smoking in areas open to the public. Moreover, the PHC had only acted after substantial legislative debate on the issue. Here, by the time the Legislature first considered the matter, in February 1986, DHCR had already submitted the proposed regulations to HPD for comment.

Finally, inasmuch as DHCR is the agency most capable of assessing the city-wide impact which *Sullivan (supra)* will have, the fourth *Boreali* consideration, the absence of special expertise or technical competence in the development of the challenged regulations, is not present here.

Since, as is apparent from the record, Joel Leshen, the brother of the named tenant, Gary Leshen, has maintained the apartment as his primary residence from the inception of the tenancy, he is entitled to the protection of section 2523.5 (b) (1) of the Rent Stabilization Code (9 NYCRR).

Accordingly, the order of the Supreme Court, Appellate Term, First Department, entered March 14, 1988, which modified a judgment of the Civil Court, New York County (Paul L. Klein, J.), entered August 6, 1986, dismissing a holdover petition against Joel Leshen, and granted petitioners a judgment of possession, should be reversed, on the law, without costs or disbursements, and the judgment of the Civil Court reinstated.

KUPFERMAN, J. P., Ross and KASSAL, JJ., concur.

Order, Appellate Term, First Department, entered on March 14, 1988, which modified judgment of the Civil Court, New York County, entered on August 6, 1986, unanimously reversed on the law, without costs and without disbursements, and the judgment of the Civil Court reinstated.