OPINION OF THE COURT
Memorandum.
Final judgment unanimously reversed without costs and petition dismissed.
The issue on this appeal is whether a family member who moves in with a tenant of a rent-stabilized apartment after the building in which the apartment is located has been converted to cooperative ownership pursuant to a noneviction plan is entitled upon the tenant’s death to a lease renewal pursuant to section 2523.5 of the Rent Stabilization Code (9 NYCRR).
Occupant’s mother lived in the subject rent-stabilized apartment. The building in which the apartment is contained was converted to cooperative ownership in late 1987. Occupant claims that he moved in with his mother in June 1990 to care for her. His mother died on April 4, 1993 and her lease expired in October 1993. Occupant contends that he is entitled to a renewal lease pursuant to 9 NYCRR 2523.5 (b).
After trial, the court found that occupant had established his case by a preponderance of the evidence, a finding that is not challenged by landlord on appeal. The court went on to hold, however, that occupant was not entitled to a renewal lease because he was not a "nonpurchasing tenant” as that term is defined in section 352-eeee of the General Business Law and that only such "nonpurchasing tenants” are protected from eviction when the building in which they reside is converted to cooperative ownership pursuant to a noneviction plan. Accordingly, the court awarded final judgment of possession to landlord.
On this appeal, the Attorney-General, as amicus curiae, joins occupant in challenging the trial court’s ruling. The Attorney- *441 General notes that the statute provides that nonpurchasing tenants who reside in dwelling units subject to government regulation continue subject to such regulation (General Business Law § 352-eeee [2] [c] [iii]) and that it authorizes the agencies charged with administering the rent and eviction laws to prescribe "regulations with respect to continued occupancy by tenants of dwelling units which are subject to regulation” provided that the regulations are not inconsistent with the statute (General Business Law § 352-eeee [5]). The Attorney-General argues that the succession provision promulgated by Division of Housing and Community Renewal (DHCR) is not inconsistent with section 352-eeee but merely provides additional protections to the family members of nonpurchasing tenants.
Landlord argues that the statute protects only nonpurchasing tenants, and not their family members, and that the rights of the deceased nonpurchasing tenant are in no way reduced if her son, who was not in possession when the conversion plan was filed, is denied a renewal lease. Landlord urges that public policy should focus on protecting the shareholders against a decline in the value of their investments and against sponsor defaults.
We agree that by its terms section 352-eeee protects only nonpurchasing tenants and not their families (cf., Gordon v Mellinger, NYLJ, Mar. 18, 1994 [App Term, 1st Dept] [where conversion is pursuant to eviction plan, statute protects only eligible senior citizens against eviction and not their family members]). But this does not determine the issue. The question is whether the protection against eviction of surviving family members provided for in the rent and eviction regulations is inconsistent with the language and purpose of section 352-eeee. A review of the history and purpose of the subject statute, as well as of the history and purpose of the succession provisions, shows that the two sets of provisions are not inconsistent.
The first restrictions upon the right of sponsors of cooperative conversions to evict nonpurchasing tenants were found in the rent control regulations. These regulations provided that a tenant could not be evicted from a rent-controlled apartment in a structure owned by a cooperative corporation unless, inter alia, "within 6 months from the time the cooperative plan was presented * * * stock in the cooperative had been sold in good faith * * * to at least 35 percent of the tenants in occupancy of controlled housing accommodations” (New York City Rent and *442 Eviction Regulations former § 55 [c] [3] [a]; New York State Rent and Eviction Regulations former § 55 [3] [c] [i]).
When the Rent Stabilization Law went into effect on May 6, 1969, it too included a restriction upon the right of sponsors to evict nonpurchasing tenants. The Code provided that an owner could not refuse to renew a lease except when he had filed a conversion plan with the Attorney-General and at least 15% of the tenants in occupancy had agreed to purchase shares or title (Administrative Code of City of NY former § YY51-6.0 [c] [9]). This provision was later amended to require that 35% of the tenants in occupancy agree to purchase (Local Laws, 1969, No. 50 of City of New York; see, Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 189).
In 1974, the Legislature enacted the so-called Goodman-Dearie Law, which provided the first State-wide controls upon conversions (L 1974, ch 1021, § 2). The law amended then General Business Law § 352-e to include, inter alia, a provision barring any conversions (by eviction or noneviction plan) unless the sponsor obtained the agreement of 35% of the tenants in occupancy to purchase (see, Note, Tenant Protection in Condominium Conversions: The New York Experience, 48 St John’s L Rev 978).
During the years that the Goodman-Dearie Law was in effect the number of conversions dropped dramatically. However, the law was not reenacted upon its expiration in 1977. Thereafter, the only controls upon sponsors were again those found in the rent and eviction laws (see generally, Tarman v Rowe, 112 Misc 2d 708, 711; Lehner & Sweet, Goodman-Dearie Expiration Leaves Coop Conversion Radically Altered, NYLJ, Nov. 16, 1977, at 25, col 1).
After the expiration of the Goodman-Dearie Law, the number of conversion plans again increased sharply. There was a loud outcry from tenants, particularly from those living in the suburbs of New York City who, unlike tenants in New York City, for the most part had no protection for continued occupancy upon conversion. As a result, the Legislature enacted a provision (General Business Law § 352-ee) which governed conversions in the Counties of Nassau, Westchester and Rockland (L 1978, ch 544). This law for the first time established a dual system of conversions, i.e., eviction and non-eviction plans, and required that a minimum percentage of tenants must agree to purchase before either type of plan became effective, 15% for noneviction plans and 35% for eviction plans. With respect to noneviction plans, the law gave *443 nonpurchasing tenants permanent protection against eviction and against unconscionable rent increases. With respect to eviction plans, the law gave eligible senior citizens permanent protection against eviction and unconscionable rent increases and gave other nonpurchasing tenants protection against eviction for two years after the plan became effective (see generally, Lehner and Sweet, Co-op Conversion Law; Impact in Suburbia, NYLJ, Sept. 20, 1978).
In 1979, General Business Law § 352-ee, the suburban law, was renumbered section 352-eee (L 1979, ch 135) and a new section 352-eeee was enacted governing conversions in New York City (L 1979, ch 432). This new law granted permanent protection against eviction only to eligible senior citizens who were tenants in a building converted pursuant to an eviction plan. Other New York City tenants, who for the most part lived in regulated apartments, remained protected under the rent and eviction regulations.
In 1980, the Legislature amended section 352-eeee to expand the grant of noneviction protection to include eligible handicapped persons (L 1980, ch 754).
In response to the ever-increasing number of conversion plans and the growing concern of New York City tenants, the Legislature, in 1982, repealed section 352-eeee and replaced it with the current section 352-eeee governing conversions in New York City. It also amended the Rent Control and Rent Stabilization Laws so as to bring their requirements with respect to eviction plans into conformity with those of the new act. The current law, inter alia, incorporates the dual system of conversion plans found in the suburban law, raises the percentage requirement for eviction plans to 51% of all tenants in occupancy, and grants permanent protection against eviction and unconscionable rent increases to senior citizens and handicapped persons in eviction plans and to all nonpurchasing tenants in noneviction plans.
In 1983, section 352-eee, the suburban law, was repealed and a new section 352-eee paralleling section 352-eeee was enacted.
With this history of the conversion laws in mind, we examine briefly the history and purpose of the succession laws.
Although legislative enactments designed to protect apartment dwellers ordinarily effectuate their broad remedial purpose by referring to "tenants”, it has long been recognized that the displacement suffered by the family of the legal tenant is no different than that suffered by the legal tenant (cf., Festa v Leshen, 145 AD2d 49, 56). As a result, the agencies *444 charged with administering the rent laws have long interpreted these laws to extend protection to the family members living with the tenant. Thus, after the Legislature enacted the Emergency Housing Rent Control Law (L 1946, ch 274, § 1), the Commission established to administer it (then known as the Temporary State Housing Rent Commission) promulgated a regulation prohibiting the eviction of the members of a deceased tenant’s family who had been living with the tenant (New York State Rent and Eviction Regulations former § 56 [4], presently 9 NYCRR 2104.6 [d]). When in 1962 the Local Emergency Housing Rent Control Act was enacted, the City agency then responsible for administering this law promulgated an identical tenant succession provision (New York City Rent and Eviction Regulations former § 56 [d], presently 9 NYCRR 2204.6 [d]; see, Festa v Leshen, 145 AD2d 49, 51-52, supra). Although these regulations by their terms protected only family members of a "deceased” tenant, the courts interpreted them to also protect family members of a tenant who had voluntarily vacated the apartment (see, Matter of Herzog v Joy, 74 AD2d 372, 376, affd 53 NY2d 821).
When the Rent Stabilization Law (Administrative Code of City of NY, ch 51, tit YY) was introduced in 1969, the association of dwelling owners charged with administering the law, which became known as the Real Estate Industry Stabilization Association, adopted a code which did not include a succession provision. Nevertheless, the Conciliation and Appeals Board established by the Association to act upon the complaints of tenants and later DHCR, when the responsibility of administering the Rent Stabilization Law was transferred to it, would, on a case-by-case basis, protect tenants from eviction where they found that a landlord had expressly or impliedly consented to the family member’s occupancy (see, Festa v Leshen, supra, 145 AD2d, at 53-54). When in 1985 the Court of Appeals ruled that the Rent Stabilization Law and Code as then written could not be interpreted to extend succession rights to family members (Sullivan v Brevard Assocs., 66 NY2d 489), DHCR responded first by issuing an Emergency Operational Bulletin (No. 85-1) to protect family members from eviction (which was struck down as ultra vires in Two Assocs. v Brown, 127 AD2d 173), then by amending the Code to include a succession provision. The validity of this amendment was upheld in Festa v Leshen (supra; see also, Rent Stabilization Assn. v Higgins, 83 NY2d 156).
The protection against eviction granted tenants and their family members by the rent control regulations has only been *445 abrogated in cases where a sponsor converts a building pursuant to an eviction plan (see, 9 NYCRR 2204.2 [a] [7]). "Where the conversion is pursuant to a noneviction plan, the regulations continue to protect tenants and their families. Although, as noted above, in enacting General Business Law § 352-eeee in 1982 the Legislature made changes to the Rent Control Law, it left this protection undisturbed. "The doctrine of repeal by implication is heavily disfavored in the law and may be resorted to only in the clearest of cases” (Ball v State of New York, 41 NY2d 617, 622; see, People v Mann, 31 NY2d 253, 257-258; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 391, 396). Here, there is no hint in the legislative history of an intention to diminish this protection.
If the noneviction protection granted family members under rent control is not inconsistent with section 352-eeee, it follows that the protection promulgated by DHCR with respect to rent-stabilized apartments is also not inconsistent with the statute. An interpretation of the statute’s grant of protection to "non-purchasing tenants” which would prohibit DHCR from promulgating a regulation providing noneviction protection to the family members of such tenants is simply untenable in light of the existing rent control regulations.
For these reasons, we hold that occupant is entitled to a renewal lease and we reverse the final judgment and dismiss the petition.
Scholnick, J. P., Chetta and Patterson, JJ., concur.