OPINION OF THE COURT
Joan A. Madden, J.
In this action for declaratory and injunctive relief and damages, plaintiff moves for an order pursuant to CPLR 6301 and 6311, preliminarily enjoining defendants from initiating eviction proceedings to remove him from his rent-stabilized apartment.
The following facts are not disputed unless otherwise noted. Since 2002, plaintiff has been the tenant of a rent-stabilized apartment located at 248 East 111th Street, apartment 4C, in Manhattan. In 2006, defendant Bae Cleaners, Inc. purchased the building. In May 2007, plaintiff received a letter from Bae Cleaners advising that his lease was due to expire on August 31, 2007, and enclosing a renewal lease form and an “apartment application.” The letter advised that if plaintiff wanted to renew his lease, he needed to “complete the apartment application in its entirety. We must have complete and updated information from all of our tenants.” Plaintiff states that he filled out the application, signed the renewal lease and mailed both to the landlord.
On or about August 1, 2007, plaintiff submitted his monthly rent to the landlord. By letter dated August 8, 2007, Bae Cleaners informed plaintiff that it could not accept his rent and would not be renewing his lease, explaining as follows:
“In light of the discovery of your questionable immigration status in the US, please be advised that we are unable to accept any rental payments from you, nor are we able to offer you a renewal lease at this time. Please understand that we must first seek legal advice from expert attorneys as well as from the Federal Immigration Authorities to ascertain the legality of our landlord tenant relationship and ensure that we [are] not in violation of any city, *829 state and federal laws.
“If we find that it is absolutely legal to rent to you, we will be more than happy to extend your lease as well as request that you remit payment for your tenancy.”
On or about September 1, and October 1, 2007, plaintiff again submitted his monthly rent payments to the landlord. On September 14 and October 10, 2007, Bae Cleaners wrote letters to plaintiff that were identical to the August 8, 2007 letter quoted above.
On or about November 17, 2007, plaintiff received a “Seven (7) Day Notice of Termination” from counsel for Bae Cleaners. The notice stated that plaintiffs tenancy would be terminated as of November 27, 2007, pursuant to Rent Stabilization Code (RSC) (9 NYCRR) § 2524.3 (c), on the “grounds that the occupancy of the subject premises by you is illegal because of the requirements of law and the owner is subject to civil or criminal penalties.” The notice listed the following as the “facts necessary to establish the existence of such ground”:
“(1) That you have admitted to the landlord and/or landlord’s agent that you are illegally in this country, when requested to provide some documentation regarding a potential renewal lease.
“(2) That your occupancy in the subject premises is in violation of Federal Statute, specifically, the Federal Immigration and Nationality Act (Section 8 United States Code 1324 (a) (1) (A) (iv) (b) (iii) placing the landlord/owner in violation of Federal Statute(s). To date you have failed to deny that you are in this country illegally, or provide the landlord with documentation to establish that you are legally in this country.
“(3) That the landlord and/or owner of the subject building in which you reside is subject to both civil and criminal penalties (including a jail sentence of up to five years) by reason of knowingly permitting you to reside in the building, now that you have informed him of your illegal status of being in this country.
“(4) That because the landlord has actual knowledge which remains undisputed that you are illegally in this country any act wherein the petitioner would be providing shelter to you in this country is in violation of Federal Statute(s).”
*830 The notice further stated that “[y]our continued occupancy of the subject premises/apartment places the landlord in violation of Federal Statute(s) and places petitioner in a position where they may be liable for severe civil penalties and fines, criminal prosecution and jail time.”
Plaintiff commenced the instant action by securing an order to show cause dated December 3, 2007, which included a temporary restraining order restraining and enjoining defendants from initiating or filing eviction proceedings against plaintiff or taking any other action to evict him from his apartment. In issuing the order to show cause, the court directed plaintiff to pay use and occupancy in the amount of rent provided in his prior lease, commencing December 5, 2007 and by the fifth day of each month, until further order of the court.
In the complaint, plaintiff seeks damages, as well as declaratory and injunctive relief, including an order directing defendants to provide him with a renewal lease, and an order permanently enjoining defendants from initiating eviction proceedings against him in New York City Housing Court. The complaint asserts four causes of action for violation of Rent Stabilization Code (9 NYCRR) § 2523.5, violation of the New York City Human Rights Law, breach of contract, and violation of General Business Law § 349.
Plaintiff is now moving for a preliminary injunction enjoining defendants from initiating eviction proceedings against him. Plaintiff asserts that defendants
“are engaged in an elaborate scheme to deceptively evict Latino tenants. Preying on some of the most vulnerable members of our community, Defendants have threatened to contact the federal immigration authorities about Plaintiffs’ tenancy in an attempt to harass him into vacating his apartment. . . . Unless Defendants are temporarily enjoined from such deceptive and illegal practices, they will continue to threaten and harass Latino tenants like Plaintiff into surrendering their rent regulated apartment.”
To be entitled to a preliminary injunction, plaintiff must demonstrate a likelihood of ultimate success on the merits,, a danger of irreparable harm in the absence of an injunction, and a balance of the equities in his favor. (See Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990]; Doe v Axelrod, 73 NY2d 748, 750 [1988]; W.T. Grant Co. v Srogi, 52 NY2d 496 [1981]; Asness v Nelson, 273 AD2d 165 [1st Dept 2000].) The decision whether *831 to grant a preliminary injunction is committed to the sound discretion of the court. (Doe v Axelrod at 750.)
Plaintiff has established that he is entitled a preliminary injunction pending determination of the underlying action by demonstrating the irreparable harm of a possible eviction if the relief sought is not granted, and that the balance of the equities is in his favor so as to maintain the status quo while awaiting a fined determination of the underlying claims. (See Jiggetts v Perales, 202 AD2d 341, 342 [1st Dept 1994].) Plaintiff has likewise established a strong likelihood of success on the merits of his claims that the landlord’s refusal to offer him a renewal lease violates the Rent Stabilization Code and the Human Rights Law.
As a rent-stabilized tenant, plaintiff is entitled to the full range of benefits and protections conferred by the State’s Rent Stabilization Code, specifically the automatic right to a renewal lease “on the same terms and conditions as the expired lease.” (RSC [9 NYCRR] § 2522.5 [g] [1]; Rosario v Diagonal Realty, LLC, 8 NY3d 755, 761 [2007].) The undisputed record establishes that defendant violated this provision by requiring plaintiff to complete a so-called “apartment application” as a condition to his receiving a renewal lease. Rather than simply sending plaintiff the renewal lease to which he was statutorily entitled, the landlord also included an “apartment application” and advised that plaintiff was required to complete the application should he choose to renew his lease. The landlord subsequently used plaintiff’s response as the basis for terminating his lease on the ground of illegal occupancy pursuant to Rent Stabilization Code (9 NYCRR) § 2524.3 (c).
Under section 2524.3 (c), a landlord may commence an eviction proceeding against a rent-stabilized tenant without the approval of the Division of Housing and Community Renewal (DHCR), if the “[o]ccupancy of the housing accommodation by the tenant is illegal because of the requirements of law and the owner is subject to civil or criminal penalties therefor.” Courts interpreting and applying this provision have consistently held that a landlord seeking to terminate a rent-stabilized tenancy based on illegal occupancy is obligated to show an actual violation of the law, or that the owner is actually subject to civil or criminal penalties. (See 210 W. 94 LLC v Concepcion, 2003 NY Slip Op 50612[U] [App Term, 1st Dept 2003]; Arrow Linen Supply Co. Inc. v Cardona, 15 Misc 3d 1143[A], 2007 NY Slip Op 51128[U] [Civ Ct, NY County 2007]; 75 Monroe St. LLC v Moy, *832 12 Misc 3d 1175[A], 2006 NY Slip Op 51238[U] [Civ Ct, NY County 2006]; Porto v Watts, 11 Misc 3d 1069[A], 2006 NY Slip Op 50436[U] [Civ Ct, NY County 2006]; 508 W. 149th St. Corp. v Bodie, 12 Misc 3d 347, 348 [Civ Ct, NY County 2005]; Prana 3750 Broadway, LLC v Alvarez, NYLJ, May 19, 2004, at 19, col 1 [Civ Ct, NY County]; 338 W. 17th St. Assoc, v Katehis, NYLJ, Oct. 5, 1994, at 22, col 2 [Civ Ct, NY County]; Andrew Scherer and Fern Fisher, Residential Landlord-Tenant Law in New York § 8:155 [2007].) Here, defendant merely asserts that it faces potential prosecution under the federal Immigration and Nationality Act (8 USC § 1324), for “knowingly permitting [plaintiff] to reside in the building,” and admits that it has not been actually charged with any violation of federal immigration law. Thus, until defendant is actually charged with violating federal immigration law, or is actually subject to civil or criminal penalties, it cannot maintain an eviction proceeding for illegal occupancy pursuant to RSC § 2523.5. (See 210 W. 94 LLC v Concepcion, supra; 508 W. 149th St. Corp. v Bodie, supra.)
Plaintiff additionally claims that defendant has violated the New York City Human Rights Law, which makes it an
“unlawful discriminatory practice for the owner . . . of a housing accommodation . . .
“(1) To refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein because of the actual or perceived . . . alienage or citizenship status of such person . . . [and]
“(2) To discriminate against any person because of such person’s actual or perceived . . . alienage or citizenship status ... in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation.” (Administrative Code of City of NY § 8-107 [5] [a] [1], [2].)
The undisputed record demonstrates discrimination based on plaintiff’s “actual or perceived . . . alienage or citizenship status” in violation of this provision. Defendant’s August, September and October letters expressly state that plaintiffs rent cannot be accepted and his lease cannot be renewed because of his “questionable immigration status in the US.” Moreover, defendant’s notice of termination could not be any more explicit in stating that plaintiffs tenancy is being terminated because of his “illegal” immigration status.
*833 The Human Rights Law includes a limited exception permitting discrimination on the ground of alienage or citizenship status, when such discrimination “is required or when such preference is expressly permitted by any law or regulation of the United States.” (Administrative Code § 8-107 [14].) Presumably relying on this exception, defendant argues that “the only reason and motivation behind the termination notices were compliance with Federal Statute and to avoid civil and criminal penalties.” To support this argument, defendant cites solely to the federal statute, 8 USC § 1324 (a) (1) (A) (iii), which subjects a person to criminal penalties if he or she “knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation.” Defendant, however, cites no federal or New York legal precedent holding that the federal statute either requires a landlord to verify a tenant’s immigration status, or prohibits a landlord from renting an apartment to a tenant who lacks legal immigration status.[1]
*834 Based on the foregoing analyses, it cannot be reasonably disputed that defendant’s refusal to renew plaintiffs lease based on his immigration status violates the protections afforded by both the Rent Stabilization Code and the New York City Human Rights Law, and, as such, it is highly likely that plaintiff will ultimately prevail on those claims.[2] Under these circumstances, plaintiff has met his burden of establishing that he is entitled to a preliminary injunction. (See Aetna Ins. Co. v Capasso, supra; Doe v Axelrod, supra; W.T. Grant Co. v Srogi, supra; Asness v Nelson, supra.)
Finally, it must be noted that this action presents issues of first impression for New York courts, which are indicative of a disturbing trend involving the private use of immigration laws to deny housing and other benefits based on immigration status. (See Huyen Pham, The Private Enforcement of Immigration Laws, 96 Geo LJ 777 [Mar. 2008]; Kristina M. Campbell, Local Illegal Immigration Relief Act Ordinances: A Legal, Policy, and Litigation Analysis, 84 Denv U L Rev 1041 [2007].) In 2006, for example, the City of Hazelton, Pennsylvania enacted a Tenant Registration Ordinance requiring landlords to verify the immigration status of prospective tenants, and to deny housing to those with illegal immigration status; a federal court struck down the ordinance as violating plaintiffs’ rights under the Supremacy and Due Process Clauses of the United States Constitution. (Lozano v City of Hazleton, 496 F Supp 2d 477 [MD Pa 2007] ; see also Villas at Parkside Partners v City of Farmers Branch, 2008 WL 2201980, 2008 US Dist LEXIS 42452 [ND Tex 2008] [holding that a local ordinance requiring landlords to review immigration documents to determine if a tenant or prospective tenant has an “eligible immigration” status, and subjecting landlords to fines and criminal penalties, is preempted *835 by federal law and violates the Due Process Clause]; Garrett v City of Escondido, 465 F Supp 2d 1043, 1054 [SD Cal 2006] [in granting a temporary restraining order against the enforcement of an ordinance sanctioning landlords who rent to illegal immigrants, the court found “serious questions” as to its constitutionality under the Supremacy and Due Process Clauses].) While the cases discussed above involve local ordinances which impact on or deny housing or other benefits based on immigration status, New York City has strong antidiscrimination laws expressly designed to protect its residents against such abuses.
Accordingly, it is hereby ordered that plaintiffs motion for a preliminary injunction is granted and defendants are preliminarily enjoined and restrained from initiating eviction proceedings to remove plaintiff from his rent-stabilized apartment; and it is further ordered that plaintiff shall continue paying use and occupancy to defendants during the pendency of this action or until further order of this court.

. Notably, the declaration of legislative intent and findings accompanying the 1989 amendments to the Human Rights Law specifically addresses the issue of discrimination based on immigration status, as it relates to housing:
“New York City is currently home to more than one million aliens. These individuals make a unique contribution to the stimulating economic and cultural diversity which is one of the City’s primary features. As a city of immigrants, New York City has a special obligation to assist those who, like most of our ancestors, have come to our country seeking a better way of life. Even under the best of circumstances, newcomers to this country find it difficult to obtain housing, employment and other necessities. However, this difficulty is compounded when landlords, employers or other persons practice discrimination against aliens. Aliens are also especially vulnerable to exploitation by unscrupulous entrepreneurs in many areas of life. The entire City suffers when a substantial part of its population lacks adequate housing, insurance coverage, health care or education.
“Recent changes in federal immigration law, intended in part to discourage the entry of undocumented aliens into the United States, have aroused fears among immigrants of a growing bias within the community against those who may look or sound foreign. It has come to the City’s attention that such people have been asked to document their citizenship status when such documentation was not required by law. Inquiries of this nature indicate that not only aliens, but those suspected of being aliens, face the threat of discrimination. Such intolerance harms the *834 City and aggravates the difficult adjustment to American life which every newcomer must make.
“It is the intent of the Council to prevent aliens from being treated unfairly in housing, employment and other areas of life. This law prohibits discrimination against aliens unless such prohibition is contrary to Federal, State or City law. . . . Unless otherwise mandated by law, all aliens are entitled to and will be guaranteed equal treatment. Nothing in this local law is intended to or shall have the effect of contradicting the requirements of federal law concerning the employment and provision of benefits to aliens.” (Local Law No. 52 [1989] of City of NY § 1.)

. In view of this determination, the court need not resolve the question whether plaintiff is also likely to succeed on his additional claim for deceptive business practices pursuant to section 349 of the General Business Law.