*8 OPINION OF THE COURT
Per Curiam.
Final judgment, entered November 30, 2011, upon a decision and order (one paper) of the same date, reversed, and new trial ordered, with $30 costs to abide the event. Appeal and cross appeal from order, dated November 30, 2011, dismissed, without costs, as subsumed in the appeal from the final judgment.
The trial of this licensee holdover proceeding centered around respondent-appellant’s entitlement to succeed to her deceased husband’s tenancy in a rent-controlled apartment located on East 97th Street in Manhattan, with considerable attention devoted at trial to the reasons and possible justification for appellant’s acknowledged absence from the apartment for a portion of the two-year period immediately preceding the tenant’s death. In this connection, appellant was permitted to testify— over petitioner’s continuing objection based on the Dead Man’s Statute (CPLR 4519) — as to her conversations and interactions with the tenant both before and during what appellant argues was an excused “temporary relocation” from the apartment premises (see NY City Rent and Eviction Regulations [9 NYCRR] § 2204.6 [d] [1] [vi]). The court, despite having allowed the aforementioned testimony to be elicited at trial, unexplainedly departed from that evidentiary ruling in its posttrial written decision and ultimately refused to consider such testimony as violative of the Dead Man’s Statute. Based in part on that determination, the court rejected appellant’s succession defense and awarded petitioner a possessory judgment. On appellant’s main appeal, we reverse and, based on the evidentiary and procedural missteps disclosed in the record, order a new trial.
 From a substantive evidentiary standpoint, the Dead Man’s Statute finds no application in this holdover eviction proceeding, where appellant’s challenged testimony was offered not “against the executor, administrator or survivor of a deceased person” (CPLR 4519), but against the petitioner building owner, clearly a stranger to the deceased tenant’s estate (see Matter of Zalk, 10 NY3d 669, 678-679 [2008]; Jerome Prince, Richardson on Evidence §§ 6-122, 6-126 [Farrell 11th ed 1995]). Thus, the court’s trial ruling on the admissibility of appellant’s testimony, later disaffirmed, was proper when made. Further, the court’s posttrial about-face on the evidentiary issue caused palpable prejudice to appellant, who, having justifiably relied on the court’s favorable trial ruling on substantial portions of her *9 testimony, now faces eviction based on a decision ultimately issued by the court without considering such testimony and without affording appellant the opportunity to alter her trial strategy and, perhaps, present other proof of which she might have availed herself had she known that the court’s trial ruling would be changed after the fact. In view of the wide swath of appellant’s testimony retroactively excluded in the court’s post-trial decision, we are not prepared to say that the evidentiary error was harmless.
Turning to petitioner’s cross appeal, we find unavailing its contention that appellant’s apparent status as an undocumented alien* automatically precludes her from succeeding to her late husband’s tenancy. Considerations of citizenship and immigration status are not among the criteria for family member succession enumerated in the governing rent-control regulations (see NY City Rent and Eviction Regulations [9 NYCRR] § 2204.6 [d] [1], [3]), and such broad considerations should not be lightly imported by implication into the regulatory scheme, particularly given its remedial purpose “to prevent the grievous harm that would ensue from the wholesale eviction of family members” from their home-apartment following the record tenant’s death or departure (Festa v Leshen, 145 AD2d 49, 57 [1989], quoting Lesser v Park 65 Realty Corp., 140 AD2d 169, 173 [1988] [involving counterpart rent stabilization family member succession provisions]). While appellant’s presence in this country may well be impermissible under federal immigration law, any such transgression, standing alone, would be insufficient to justify denying her tenancy succession rights to which she otherwise may be entitled, at least where, as here, no claim is advanced or showing made that appellant took occupancy of the subject apartment through the use of false pedigree or other documentation (see generally Balbuena v IDR Realty LLC, 6 NY3d 338, 361 [2006]) or that her continued occupancy in the apartment would subject petitioner to civil or criminal penalties *10 (see Recalde v Bae Cleaners, Inc., 20 Misc 3d 827 [2008]). Indeed, in the circumstances here present, adoption of the per se preclusion rule advocated by petitioner would run afoul of the spirit, if not the letter, of the New York City Human Rights Law, which makes it an unlawful discriminatory practice to refuse housing accommodations to any person based on that person’s “actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, marital status ... or alienage or citizenship status” (Administrative Code of City of NY § 8-107 [5] [a] [1] [emphasis supplied]). Any potential adverse consequences that may follow from a violation of the immigration laws is a matter for immigration authorities, not this court (see generally Village Dev. Assoc. v Walker, 282 AD2d 369 [2001]).
Katz Park Ave. Corp. v Jagger (11 NY3d 314 [2008]), relied upon by petitioner, does not dictate a contrary result. That case supports the proposition that a foreign citizen legally in the United States pursuant to a tourist visa — the issuance of which requires the holder to have a “principal, actual dwelling place” outside the United States (id. at 317) — may not properly assert primary residence status under rent stabilization. In so holding, the Court of Appeals expressly left open the separate, distinct issue, now before us, as to whether a person in this country illegally “may have a primary residence in New York for rent regulation purposes” (id. at 318). For the reasons stated above, we answer that question in the affirmative.
In remanding the matter for a new trial based on the evidentiary concerns discussed above, we express no view as to the outcome of this case or the substantive merits of appellant’s succession defense.
Shulman, J.E, Hunter, Jr., and Torres, JJ., concur.

 Although appellant does not now directly refute her alleged status as an illegal alien, we note that the record contains scant and conflicting evidence on the issue, consisting of appellant’s brief acknowledgment on cross-examination that she entered the United States illegally in 1999, and, seemingly contradictorily, the admission into evidence of various tax returns bearing appellant’s name and Social Security number. The matter is made no less uncertain by appellant’s cryptic response on cross-examination that at some unspecified time after her entry into this country she “applied in order to correct that situation [her immigration status],” a response which was not followed up by any inquiry as to the pendency or outcome of the immigration application.